**Opinion issued October 25, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-01022-CV

———————————

**JESUS MIRANDA, Appellant**

**V.**

**STEPHEN BYLES, Appellee**

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-73708**

## OPINION ON REHEARING

We originally issued our memorandum opinion in this appeal on February 16, 2012. Appellant, Jesus Miranda, has filed a motion for rehearing and for en banc reconsideration. We grant the motion for rehearing, vacate our earlier

judgment, withdraw our previous opinion, and issue this opinion in its place. We dismiss the motion for en banc reconsideration as moot.

Miranda challenges the trial court's judgment holding Jesus liable for publishing statements determined to be defamatory per se. In three issues, Jesus argues (1) the statements were not defamatory per se; (2) Stephen failed to prove that the statements were false; (3) there is legally and factually insufficient support for the award of actual damages; and (4) neither statement is actionable under the incremental harm theory.

We affirm.

## Background

Some time in September 2007, Valerie Villarreal came from her home in Harlingen to the home of her mother and step-father, Lisa Villarreal and Stephen Byles, in Sealy, Texas. What was supposed to be a short visit turned into an extended stay.

At the time, Valerie relied on Lisa and Stephen for financial support. She was also known to be friends with gang members and was involved in drugs and drinking alcohol.

During the visit, Valerie's sister, Vanessa Villarreal, turned 16. That night, Vanessa snuck out of the house and spent time with some of Valerie's gang friends. Valerie initially denied knowing where Vanessa was. Eventually, Valerie

became concerned, admitted to knowing who she was with, and began assisting her mother in locating Vanessa. Vanessa showed up later the next day, under the influence of some drug.

This led to a fight between Valerie and Lisa and Stephen. Lisa and Stephen told Valerie she was going to lose some of her financial support and that she was going to have to return home. Stephen then left for a business trip to Singapore the next day, October 4, 2007.

On Friday, October 5, 2007, Valerie's daughter, L.S., told her that Stephen had placed his hand on her vagina. L.S. was three at the time of the outcry. Valerie reported that L.S. was not upset when she told this to Valerie. Valerie told her mother about what L.S. had said. In the discussion, Lisa told Valerie she still needed to leave and that Valerie should get L.S. examined if she believed the statement.

Jesus Miranda, Lisa's brother, found out about the outcry the next day. While he had not been involved in the lives of Valerie and L.S. before the outcry, he became very involved following the outcry. Jesus told Valerie that he was going to call CPS if she did not. Valerie told him she planned to take L.S. to be examined.

Jesus also called Lisa. Lisa told him she did not want to talk to him about it. Jesus began telling Lisa about how they could team up and get Stephen. At the end

3

of the conversation, he told Lisa that he would get her and Stephen and that she would go down with Stephen.

Valerie took L.S. to a hospital to be evaluated on Monday, October 8, 2007. The hospital required the authorities to be alerted before an examination could be performed, so Valerie contacted the Child Protective Services division of the Department of Family and Protective Services ("CPS"). L.S. was interviewed by the doctors. They asked her if she had been touched, and L.S. said Stephen's name. The doctors at the hospital attempted to physically examine L.S., but she would not let them. The examination was discontinued.

After the incident was reported, CPS began an investigation into the allegations. The Austin County District Attorney's Office also began an investigation into the allegations.

Later in October, Jesus took Valerie and L.S. to a barbecue at the house of some friends. Jesus introduced L.S. to those at the barbecue as the child that Stephen molested. Valerie was staying with Jesus around this time and heard him telling people on the telephone that Stephen had molested L.S.

On October 22, 2007, Valerie and Jesus took L.S. to the Children's Assessment Center. The people at the center first interviewed L.S. Then they performed a physical examination, but the examiners concluded that there was no physical indication of whether L.S. had been sexually molested.

4

Shortly after the visit to the Children's Assessment Center, Jesus told Valerie that he did not need her any more. Valerie went back home to Harlingen. While she was in Harlingen, Jesus called her several times and told her that she would lose her kids if she did not do certain things and threatened to call CPS on Valerie.

Around November 13th, 2007, Lisa, at Valerie's request, took possession of Valerie's children. Valerie had told Lisa that, if she did not take the children, Valerie would give them to CPS. Valerie felt that she was not stable anymore and could not give the children the attention they needed. Stephen lived separately from Lisa once she took possession of the children.

Proceedings for Lisa to take custody of Valerie's two children were initiated in Houston. An amicus attorney was appointed in that case to look after the best interest of the children.

After Lisa took possession of the children, Valerie told her that Jesus wanted to issue an Amber Alert on the children. Around that time, allegations arose that Lisa had kidnapped the children. At trial, Jesus testified that he could not recollect telling the district attorney that Lisa had kidnapped the children.

During this course of events, Jesus frequently called or texted Lisa, making accusatory statements. In one message left on her voicemail, he told Lisa that he and Valerie were on their way to the police station and that the police were going

5

to take Valerie's children from her. In that message, Jesus also said, "It's not going to be under your terms anymore, Lisa. Stephen's money isn't what dictates this. Stephen's hand on your granddaughter's vagina isn't what dictates this. OK? I dictate this now, honey."

A hearing on temporary custody of Valerie's children was held in January 2008. Before the hearing, Jesus called Valerie, telling her not to back down and saying, "What if next time he penetrates your daughter?" Jesus came to the hearing as well. He told Valerie that the only reason Lisa was taking the children was to try to help Stephen's case. The family court entered an order giving Lisa indefinite temporary custody of the children. The order also restricted Stephen from being around the children.

Also in January, Jesus told his brother, Juan Miranda, Jr., that Stephen had molested L.S. and, in addition, said that a doctor confirmed that Stephen had sexually molested L.S. Jesus claimed that he knew that it happened.

The amicus attorney ultimately represented to the family court that the children would be better off in Lisa and Stephen's possession. In May 2008, the family court lifted the portion of its temporary order that prohibited Stephen from being in the presence of the two children. Lisa was awarded custody of Valerie's children.

Eventually, the investigations by CPS and the Austin County District Attorney's Office were concluded without pressing charges or any claim of wrongdoing by Stephen.

Stephen filed a suit against Jesus on December 12, 2008. At the time of trial, Stephen asserted claims of slander per quod, slander per se, and intentional infliction of emotional distress. At trial, Stephen limited his claim to slander per se based on (1) the voicemail message Jesus left for Lisa stating, "Stephen's hand on your granddaughter's vagina isn't what dictates this" and (2) Jesus's representation to his brother Juan that a doctor confirmed that Stephen had sexually molested L.S.

The parties agreed to a bench trial. The two-day trial began on May 17, 2010. On May 18, 2010, the trial court issued its findings of fact and conclusions of law. The findings of fact, in relevant part, contained the following:

6. Ste[ph]en Byle[s] was a credible witness. His testimony was clear, positive, and direct. His demeanor on the witness stand exhibited trustworthiness and honesty.

7. Jesus Miranda was not a credible witness. His testimony was often evasive, contradictory, and implausible. His demeanor on the witness stand did not suggest that he was trustworthy.

8. Ste[ph]en Byle[s] brings this lawsuit as a private individual.

9. Jesus Miranda is not a member of the print or broadcast media.

10. The issues concerning defamation involve only Ste[ph]en Byle[s]'s individual interests, not public interests.

7

11. On December 12, 2007, Jesus Miranda published a statement stating "Ste[ph]en's hands on your granddaughter's vagina isn't what dictates this."

12. In January 2008, Jesus Miranda published a statement to Juan Miranda that a doctor had examined L.S. and that the doctor had confirmed that L.S. had been sexually molested by Ste[ph]en Byle[s].

13. Jesus Miranda's statements described in ¶¶ 11–12 of the Findings of Fact ("Defamatory Statements") were defamatory concerning plaintiff.

14. The Defamatory Statements were false.

. . . .

17. As a result of Jesus Miranda's defamatory statements, Ste[ph]en Byle[s] has endured mental and emotional anguish, been shunned from his wife's family, and suffered injury to his reputation.

. . . .

28. Neither the Defamatory Statements nor [other statements] were made while assisting in the investigation of a report of alleged child abuse or neglect or while testifying or otherwise participating in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect.

29. An award of $25,000 would fairly and reasonably compensate Ste[ph]en Byle[s] for the mental and emotional anguish and damage to reputation that he suffered as a result of Jesus Miranda's defamatory conduct.

. . . .

31. An award of $50,000 should be assessed against Jesus Miranda and awarded to Ste[ph]en Byle[s] as exemplary damages.

The conclusions of law, in relevant part, contained the following:

6. The Defamatory Statements constitute defamation per se because they impute sexual misconduct and allege that Ste[ph]en Byle[s] committed a criminal act.

7. Since the Defamatory Statements by Jesus Miranda constitute defamation per se, Ste[ph]en Byle[s] may recover general damages without proof of injury.

. . . .

14. Under TEX. FAM. CODE § 261.106(a), a person who in good faith reports or assists in the investigation of alleged child abuse or who testifies or participates in a judicial proceeding arising from a report or investigation of alleged child abuse is immune from civil liability that might otherwise arise.

15. Under TEX. FAM. CODE § 261.106(c), a person who acts in bad faith or with malicious purpose in reporting alleged child abuse or neglect is not immune from civil or criminal liability.

16. [Miranda] is not immune from liability for [Byles]'s claims under TEX. FAM. CODE § 261.106.

The judgment awarded Stephen $25,000 in actual damages for the slander per se claim and $50,000 in exemplary damages.[1]

**Slander Per Se**

In part of his second issue, Jesus argues the statements that formed the bases for liability were not defamatory per se because they were not objectively verifiable.

---

[1] In the findings of fact and conclusions of law, the trial court determined that Jesus was liable to Stephen for intentional infliction of emotional distress based on separate facts. It also determined that an award of $25,000 in actual damages would compensate Stephen for this claim. This award was not included in the judgment, however, and no party complains of this on appeal.

9

## A.     Standard of Review & Applicable Law

"Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court." *Cecil v. Frost*, 14 S.W.3d 414, 417 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987)).  Questions of law are subject to de novo review.  *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994).

If the statement is *capable* of a defamatory meaning, but the statement is also "ambiguous, of doubtful import, or susceptible of two or more interpretations, its actionability must ordinarily be decided" by the fact finder.  *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 583 (Tex. App.—Austin 2007, pet. denied).  We accord a trial court's findings of fact the same force and dignity as a jury's verdict.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).   Such determinations are reviewable for legal and factual sufficiency. *Id.*

"An oral statement is defamatory per se only if it falls within one of the following categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct." *Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011, no pet.).    "[A]n allegedly defamatory

10

publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). This is an objective test. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004).

"For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.—Tyler 2008, pet. denied) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S. Ct. 2695, 2706 (1990); *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002)). If a statement "cannot reasonably be interpreted as stating actual facts about an individual," it is not actionable. *Milkovich*, 497 U.S. at 20, 110 S. Ct. at 2706.

## B. Immunity

In his motion for rehearing, Jesus adopts the argument from the dissent that he is immune from liability based on section 261.106 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 261.106 (Vernon 2008). As pointed out by the dissent, section 261.106 provides:

> (a) A person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect is *immune from civil or criminal liability* that might otherwise be incurred or imposed.

*Id.* § 261.106(a) (emphasis added).

11

The dissent also correctly points out that "Immunity from liability and immunity from suit are two distinct principles." *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Finally, the dissent even recognizes that "[i]mmunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *see also City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (holding "[b]ecause immunity from liability constitutes an affirmative defense, not a jurisdictional bar, only immunity from suit is properly before us today"); *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009) (holding "immunity from liability is not jurisdictional").

Even assuming without deciding that Miranda properly presented and preserved this issue in the trial court, it is undisputed that Miranda never raised this issue in his brief on the merits on appeal.[2] Instead, the dissent raised it for the first time, and Jesus attempts to adopt it in his motion for rehearing.

An issue raised for the first time in a motion for rehearing is waived. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 885 (Tex. 2001); *see also Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 646 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that issue in motion for

---

[2] No reference to immunity is made anywhere in Miranda's brief on the merits.

12

rehearing is waived if original brief "is not sufficient to acquaint the Court with the issue and does not present an argument that would allow the court to decide the issue").

Jesus cannot rely on the dissent's raising of the issue to avoid waiver. It is well established in Texas law that "an appellate court cannot reverse a trial court's judgment absent properly assigned error." *Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *accord Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990); *San Jacinto River Authority v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990). An exception to this rule is that an appellate court can consider matters concerning the trial court's subject-matter jurisdiction sua sponte. *Volume Millwork, Inc. v. W. Hous. Airport Corp.*, 218 S.W.3d 722, 726 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding "[l]ack of subject-matter jurisdiction is fundamental error that this Court may properly raise and recognize sua sponte"). We have already recognized that a claim of immunity from liability is not jurisdictional. *See Miranda*, 133 S.W.3d at 224; *Harris County Hosp. Dist.*, 283 S.W.3d at 842 (holding "immunity from liability is not jurisdictional"). Accordingly, it was not an issue that this Court could raise sua sponte.

Nevertheless, the dissent continues to treat immunity from liability as a jurisdictional bar. Although it "protects from judgment," immunity from liability "is not jurisdictional." *Harris County Hosp. Dist.*, 283 S.W.3d at 842. Assuming

without deciding that Jesus properly asserted this affirmative defense at trial, asserting an affirmative defense does not convert it into a jurisdictional issue. Even assuming it was error for the trial court to determine that section 216.106 did not apply to Jesus and to enter a judgment against him, these were not jurisdictional errors.

Because Jesus did not raise his affirmative defense of immunity from liability on appeal and because the issue is not jurisdictional, we cannot reach the merits of this argument and it cannot be a basis for reversing the trial court's judgment. *See Pat Baker Co.*, 971 S.W.2d at 450 (holding "an appellate court cannot reverse a trial court's judgment absent properly assigned error").

## C.    Analysis

Stephen's claim of slander per se was based on two of Jesus's statements: (1) the voicemail message Jesus left for Lisa stating, "Stephen's hand on your granddaughter's vagina isn't what dictates this" and (2) Jesus's representation to his brother Juan that a doctor confirmed that Stephen had sexually molested L.S.

The second statement is actionable as slander per se. A person of ordinary intelligence would perceive it to impute both a crime and sexual misconduct. *See Downing*, 348 S.W.3d at 424; *Turner*, 38 S.W.3d at 114. Furthermore, the statement is a factual statement that can be objectively verified. *Zimmer*, 257 S.W.3d at 509.

14

We do not need to determine whether the first statement was actionable as slander per se as well. While the trial court, in its findings of fact and conclusions of law, determined that both statements were actionable as slander per se individually, it awarded damages for both statements without apportioning between the two statements. Neither party objected or asked for additional findings of fact and conclusions of law. *See* TEX. R. CIV. P. 298 (allowing party to ask court to file additional or amended findings of facts).

In a jury trial, if a jury question improperly asks the jury to apportion liability based on both permissible and impermissible bases for liability, an objection to the form of the question must be raised in order to preserve the issue for appeal. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Harris Cnty. v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002). Otherwise, any complaint about the sufficiency of the evidence to support the determination is based on the determination as a whole. *In re A.V.*, 113 S.W.3d at 362; *Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995).

The corollary to that rule in bench trials is a party must ask for additional findings of fact and conclusions of law asking for a detailed apportionment of findings between the permissible and impermissible bases for liability. *Tagle v. Galvan*, 155 S.W.3d 510, 516 (Tex. App.—San Antonio 2004, no pet.). Failure to

15

request additional specific findings will waive any error, and any sufficiency analysis is limited to the determination as a whole. *Id.*

Jesus did not ask for additional findings of fact and conclusions of law for apportionment of damages between the two statements. Accordingly, our review of the damage award is limited to sufficiency of the damages award as a whole. *See id.*; *In re A.V.*, 113 S.W.3d at 362. Even if we were to hold that the first statement was not defamatory per se, then, our analysis of the damage award would be the same. As a result, analysis of whether the first statement was defamation per se is not necessary for final disposition of the appeal. *See* TEX. R. APP. P. 47.1 (requiring appellate courts to address every issue raised and necessary to final disposition of the appeal).

## Falsity

In the remainder of his second issue, Jesus argues that Stephen failed to prove that the statements were false.

### A. Standard of Review

We review the sufficiency of the evidence supporting a trial court's challenged findings of fact by applying the same standards that we use in reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the appellate record includes the reporter's record, the trial court's factual findings, whether express or

16

implied, are not conclusive and may be challenged for legal and factual sufficiency of the evidence supporting them. *See Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex. App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex. 1985).

In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). In resolving factual disputes, the trial court may believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). In making credibility determinations, the fact-finder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller*, 168 S.W.3d at 820. The fact-finder thus is not "free to believe testimony that is conclusively negated by undisputed facts." *Id.* However, if the fact finder could reasonably believe the testimony of one witness or disbelieve the testimony of another witness, the appellate court "cannot impose [its] own opinions to the contrary." *Id.* at 819.

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to

17

determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In an appeal from a bench trial, we review a trial court's conclusions of law as legal questions, de novo, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.*; *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). If we determine that a conclusion of law is erroneous, but that the trial court nevertheless rendered the proper judgment, the error does not require reversal. *BMC Software*, 83 S.W.3d at 794.

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* If the evidence falls within the zone of reasonable disagreement, then we may not substitute our judgment for that of the fact finder. *Id.* at 822. The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence supporting and contradicting the challenged finding and set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v.*

18

*Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989).

**B.    Analysis**

Before addressing the merits of this issue, we must first address who had the burden of proof and how high that burden was.  Which party bears the burden, as well as the height of the burden, to prove truth or falsity of the statement depends on the status of the plaintiff (private, public, or limited-purpose public), the status of the defendant (media or non-media), and the type of issue (public or private).

Jesus does not challenge the trial court's finding that, for purposes of this suit, Stephen is a private plaintiff and Jesus is a non-media defendant.  He does assert, however, that this is a public issue instead of a private one.  We disagree.

Jesus asserts that this is a public issue because it involves allegations of sexual abuse, which—Jesus asserts—"implicates a question of public importance." An issue is not a public issue simply because it is a controversy of interest to the public.  *Klentzman v. Brady*, 312 S.W.3d 886, 905 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 454, 96 S. Ct. 958, 965 (1976)).  Instead, the inquiry concerns whether people in the public were debating the specific issue and whether the media was covering that debate.  *Id.* (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 572 (Tex. 1998)).  A matter can be a public issue because people in the public are discussing it or because people

19

other than the immediate participants in the controversy are likely to feel the impact of its resolution. *See McLemore*, 978 S.W.2d at 572.

There is no evidence in the record that this matter was being discussed by anyone other than the officials in charge of the various investigations, and Lisa's family. Nor is there any evidence that anyone other than Stephen and Lisa's family members were likely to feel the impact of its resolution. We hold the trial court did not err by determining that this was a private issue.

Jesus also argues that, even though he is a non-media defendant, he should not be treated differently from a media defendant. To support his argument, Jesus relies on a dissenting opinion written by Justice Brennan in the United States Supreme Court. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 23 n.2, 110 S. Ct. 2695, 2708 n.2 (1990) (Brennan, J., dissenting). Regardless of the merits of Justice Brennan's argument in his dissent, we are bound to follow the majority decisions of the United States Supreme Court on questions of federal constitutional law. *Ex Parte Twedell*, 309 S.W.2d 834, 844 (Tex. 1958). The United States Supreme Court has drawn a distinction between media and non-media defendants. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776–77, 106 S. Ct. 1558, 1564 (1986) (holding common-law presumption that defamatory speech is false cannot stand when plaintiff sues media defendant for speech of public concern); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759–

20

61, 105 S. Ct. 2939, 2945–46 (1985) (allowing common-law presumption of falsity to exist for private issues involving private non-media parties). We are bound by this distinction.

Nevertheless, Jesus points out in his brief that there is some inconsistency from this Court on who carries the burden of proving truth or falsity of the statement when a private plaintiff sues a non-media defendant on a private issue. We have held that the plaintiff bears the burden of proving falsity in this situation. *El-Khoury v. Kheir*, 241 S.W.3d 82, 85 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). We have also held that the defendant bears the burden of proving the statement was substantially true in this situation. *Rodriguez v. Printone Color Corp.*, 982 S.W.2d 69, 73 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Vice v. Kasprzak*, 318 S.W.3d 1, 17 n.9 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); s*ee also* TEX. CIV. PRAC. & REM. CODE ANN. § 73.005 (establishing truth of statement in action for libel as a defense) (Vernon 2011); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (holding truth is affirmative defense to slander in suits between private individuals).

We do not need to resolve this conflict, however. Regardless of who carried the burden of proof in this case, the evidence shows that the second statement was false.

21

The second statement asserted that a doctor had confirmed that L.S. had been sexually molested by Stephen. Only one medical examination was completed on L.S. The examiners concluded that there was no physical indication of whether L.S. had been sexually molested let alone whether the molestation had been done by Stephen.

We do not need to analyze whether the first statement was false for the same reason we did not need to analyze whether the first statement was defamation per se. The trial court awarded damages for both statements without apportioning between the two statements. Jesus did not ask for additional findings of fact and conclusions of law for apportionment of damages between the two statements. Accordingly, our review of the damage award is limited to sufficiency of the damages award as a whole regardless of whether the first statement was false. *See Tagle*, 155 S.W.3d at 516; *In re A.V.*, 113 S.W.3d at 362.

We hold that, regardless of who carried the burden of establishing truth or falsity, there is sufficient evidence in the record to support the trial court's finding that the second statement was false. We overrule Jesus's second issue.

## Damages

In his first issue, Jesus argues the evidence is insufficient to sustain an award of any damages more than a nominal amount.

## A. Standard of Review

As Jesus is challenging the legal and factual sufficiency of the damage award, we apply the same legal and factual sufficiency standards stated in the section on falsity.

## B. Analysis

The trial court awarded Stephen $25,000 in actual damages for his claim of slander per se and $50,000 in exemplary damages. For the actual damages, the trial court indicated the award was compensation "for the mental and emotional anguish and damage to reputation that he suffered as a result of Jesus Miranda's defamatory conduct."

Jesus argues that there is no evidence that Stephen suffered any damage to his reputation based on the two statements that formed the bases for his claim. He also argues that "there is no evidence that [Stephen] suffered mental anguish as a result of the statements." Finally, he argues that, because the trial court's award of actual damages cannot be sustained, the award of exemplary damages must also be overturned.

"Our law presumes that statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish." *Bentley*, 94 S.W.3d at 604. This means that a defendant is liable to a plaintiff for statements that are defamatory per se

23

"even in the absence of any evidence of harm." *Downing*, 348 S.W.3d at 425. "At a minimum, the plaintiff is entitled to a nominal sum, but is not limited to that amount, and the jury may choose to award damages that are 'substantial.'" *Id.*; *see also Texas Disposal*, 219 S.W.3d at 581 (holding for defamation per se claims, plaintiff is entitled to recover, "at a minimum, nominal damages"). Accordingly, Stephen was not required to present evidence of damages in order to recover general damages such as loss of reputation and mental anguish.

Jesus relies on *El-Khoury* to establish that it was Stephen's burden to establish his damages. As Jesus acknowledges, however, *El-Khoury* was a defamation per quod case. 241 S.W.3d at 85 n.5. The plaintiff must prove damages in a defamation per quod case. *Texas Disposal*, 219 S.W.3d at 580. *El-Khoury*, then, is not applicable on this basis.

Jesus acknowledges that there is a presumption of damages for statements that are defamatory per se. He argues, however, that this presumption is rebuttable. We have not found any Texas cases that address whether the presumption of damages for defamatory per se statements is rebuttable or irrebuttable. Nor do we need to resolve this question here, because, even if the presumption is rebuttable, Jesus failed to establish that Stephen was not harmed by his statements.

When a rebuttable presumption exists, the burden of producing evidence shifts to the party against whom the presumption operates. *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). This means it would have been Jesus's burden to disprove that Stephen suffered any damage as a result of his statements.

Jesus argues that "there is no evidence that [Stephen] suffered mental anguish as a result of the statements." We agree. It was not Stephen's burden, however, to prove the damages he suffered. *See Bentley*, 94 S.W.3d at 604. Assuming the presumption of damages was rebuttable, it would have been Jesus's burden to disprove the damages. *See Hot-Hed*, 333 S.W.3d at 730.

Jesus did introduce evidence that Stephen had not sought counseling or medication to help him with any mental anguish he may have suffered. This does not prove, though, that Stephen did not suffer mental anguish. It only means he did not seek counseling or medication as a result. Because there is no evidence of whether Stephen suffered mental anguish, Jesus failed to carry any burden of disproving damages.

The trial court did not subdivide its damages award by mental anguish damage and damage to reputation. Jesus did not file a request for additional or amended findings of fact or conclusions of law. Accordingly, he has waived any complaint regarding the sufficiency of the evidence to support separate damage

findings. *See Tagle*, 155 S.W.3d at 516. Instead, a sufficiency complaint is limited to challenging the sufficiency of the evidence to support the damage award as a whole. *Id.*

After hearing testimony that Jesus's accusations had caused Lisa's and Stephen's alienation from the rest of Lisa's family and that they no longer felt safe traveling to the valley for family functions, the trial court found that Stephen had suffered injury to his reputation. Nevertheless, we have held that Jesus did not disprove Stephen's mental anguish damage. Even if we agreed that Jesus did disprove Stephen's damage to reputation, he is still only limited to a review of the damages as a whole because of his failure to request a subdivision of damages in the trial court's findings of fact and conclusions of law. *Id.* Accordingly, we only consider any complaints about the damage award as a whole.

The only argument that Jesus raises to the damages as a whole is his argument that, because Stephen did not present evidence of his damages, he is limited to nominal damages. We disagree. A plaintiff in a defamation-per-se case who does not present evidence of damages is entitled to, at a minimum, nominal damages. *See Downing*, 348 S.W.3d at 425; *Tex. Disposal*, 219 S.W.3d at 581. He is not limited to nominal damages, however. *See Downing*, 348 S.W.3d at 425; *Tex. Disposal*, 219 S.W.3d at 584.

26

Jesus's only argument concerning the award of exemplary damages is that, because the trial court's award of actual damages cannot be sustained, the award of exemplary damages must also be overturned. Because we have held that the award of actual damages can be sustained, this argument necessarily fails.

We overrule Jesus's first issue.

**Incremental Harm**

In his third issue, Jesus encourages us to adopt the "incremental harm theory" for damages in defamation cases. According to Jesus, under the incremental harm theory, if a plaintiff is damaged both by truthful information and false defamatory information, the plaintiff is limited in his damages to the incremental harm done to his reputation by the false defamatory statement. *See Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967, 974 (7th Cir. 2001).

The incremental harm theory for defamation has not been adopted in Texas. Even if we were to adopt this theory, however, Jesus has not established that Stephen was awarded damages greater than any incremental harm done to him by Jesus's statements. Jesus argues, "An outcry of child sexual abuse, coupled with the child's mention of the name of the alleged abuser to an examining doctor, is just about as damaging to a suspect's reputation as are statements that the suspect is a child abuser, and that a doctor has confirmed the same." We disagree.

27

There is a distinct difference between a statement by a three-year-old child that a specific person had touched her vagina and an assertion by an adult that the abuse took place, just as there is a very distinct difference between an inconclusive determination whether any abuse took place and an alleged determination by a doctor that a specific person did in fact molest the child.  Jesus has presented us with no argument as to why the damage award should be considered greater than the incremental harm between the truth and his statements.

We overrule Jesus's third issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

28