**Opinion issued October 2, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00229-CV

————————————

**JONATHAN LEVINE AND SAMANTHA LEVINE, Appellants**

**V.**

**STEVE SCHARN CUSTOM HOMES, INC., STEVE SCHARN, AND NEWFIRST NATIONAL BANK, Appellees**

On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Case No. 08-DCV-162201

## DISSENTING OPINION

I respectfully dissent. I would hold that the appellees, Steve Scharn and Steve Scharn Custom Homes, Inc. (collectively "SSHI"), have failed to state a claim for defamation against the appellants, Jonathan and Samantha Levine. The jury's defamation finding violates the Levines' First Amendment right to free

speech, and the trial court's judgment of liability and award of $360,000 in money damages to SSHI for defamation should be reversed and judgment rendered that SSHI take nothing by its defamation claim.

In my view, the trial court's judgment—affirmed by the panel majority—both severely and unconstitutionally penalizes Jonathan Levine for his expression of his opinion. A fellow subdivision homeowner complained in an email to the Levines that the Levines' unfinished home was a blight on home values in the neighborhood, and Jonathan Levine responded that the reason the home was only partially finished was that the prior homebuilders were "2 crooks." Levine informed the inquirer that if he wanted to know about injustice occurring in the neighborhood, he could look up the suits the Levines had filed against their former builders, SSHI and Mark Blake and M&A Custom Homes. Upon discovery of the email, one of those builders, SSHI, added this defamation claim against Jonathan Levine as a counter-claim in the then pending, non-frivolous litigation the Levines had filed against it.

In my view, the trial court's judgment for damages for defamation under these circumstances and the majority opinion affirming that judgment greatly expand liability for defamation beyond anything previously recognized in Texas law. In effect, this case severely penalizes opinion speech about ongoing legal proceedings in a matter of concern both to the person making the statement and to

2

the recipient and gives defendants in non-frivolous litigation a new power to sue plaintiffs for defamation for stating an opinion of the defendant based on the facts giving rise to a claim in the same litigation. Therefore, I respectfully dissent. I would reverse the judgment of the trial court and declare that SSHI take nothing by its defamation claims.

As the majority states, SSHI's defamation claim was based on its discovery, after the Levines had filed this litigation against it, of an email sent by Jonathan Levine in response to complaints raised by John Hettig, one of the residents in Sovereign Shores, a subdivision in which the Levines were building a home. Hettig and other neighbors complained to the Levines that their uncompleted home was an eyesore and a nuisance that was harming their property values. In response, Levine sent an email that contained the subject line "10 Sovereign Circle- The House That Crooks Ruined" and stated,

> I can only apologize for the inconvenience and welcome you to look up Levine versus Steve Scharn Custom Home builders, Mark Millis and the Millis Development Company, New First Bank as well as Royal Palm Homes Inc., Ron Scharn, and Ron Scharn's Wife's Insurance Company in the Fort Bend civil court if you would like to know about the injustice occurring in our community. Also look up Levine versus Mark Blake and M and A Custom Homes. Hopefully you will also share it with everyone else. You should also talk to Dr. Jalal as well. I can only say that you are very fortunate to have had a[n] honest builder. We have had 2 crooks.

The email thus referred Hettig to the two lawsuits the Levines had filed against their builders—including the instant suit—following numerous complaints they

had had with the builders that were stated in the pleadings and subsequently tried in court on claims of breach of contract, theft, fraud, negligence, gross negligence, and deceptive trade practices. The first suit, against Mark Blake and M&A Custom Homes, had been tried to a judgment in the Levines' favor just before the email was sent. The instant case would subsequently be tried and judgment entered in SSHI's favor, but with findings of breach of contract by both parties.

In his response, Hettig stated that he was not concerned about the Levines' troubles with their builders. Instead, he stated, "Thanks . . . . My concern is not with your business but [the] value of Sovereign Shores! Unfortunately, your house has become a major detriment."

Upon discovering the email during the pendency of this litigation, SSHI added a defamation counterclaim to its pleadings, and the claim was tried to a jury.

The jury was asked in Question 23 to determine whether the email sent by Jonathan Levine to Hettig was "published" by being "intentionally or negligently . . . communicate[d] to a person other than Steve Scharn or Steve Scharn Custom Homes, Inc. who is capable of understanding its meaning." The jury responded "yes." In Question 24, the jury was asked whether the statement was "defamatory concerning [Scharn]," and, in Question 25, it was asked whether "the statement" was false. It responded "yes" to both these questions. Defamation was not defined in the charge. "False" was defined as "a statement that is not true

4

or not substantially true." In response to Question 26, the jury awarded SSHI $720,000 in damages for defamation, which the trial court subsequently remitted to $360,000. And in Question 27 it was asked whether the statements in the defamatory email were made with "malice"; but it was instructed not to answer the question as to malice if the verdict on damages was not unanimous. Because the verdict on damages was not unanimous, the jury did not answer Question 27. Thus, the jury made no finding of actual malice.

In their first issue on appeal, the Levines complain that the statement the jury found defamatory was "not capable of defamatory meaning, certainly not libel per se," and that SSHI did not show proof of both defamation and damages, as required for libel per quod. In their second issue, they argue that the email was substantially true in referring to "2 crooks" and that, at the time the email was sent, the Levines had just obtained a judgment against Blake and M&A Custom Homes, two builders hired by the Levines prior to SSHI.

I agree with the Levines that the statement in the email that the Levines had had "2 crooks" as homebuilders was not capable of defamatory meaning; it was a statement of opinion. I conclude that the only statements in the email that could be construed as statements of fact capable of objective verifiability were the statements that the Levines had filed lawsuits against their builders that Hettig

5

could look up.  In my view, these statements were both substantially true and privileged.[1]

## A. Standard of Review

### *1. Lack of Objective Verifiability*

To establish defamation, the plaintiff must prove that the defendant published a false statement of fact.  *See El-Khoury v. Kheir*, 241 S.W.3d 82, 85 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *AccuBanc Mortg. Corp. v. Drummonds*, 938 S.W.2d 135, 149 (Tex. App.—Fort Worth 1996, writ denied) ("Defamation involves the publication of a false statement of fact about the plaintiff. . . .").  The plaintiff must demonstrate that (1) the defendant published a factual statement (2) that was capable of defamatory meaning (3) concerning the plaintiff (4) while acting with either negligence, if the plaintiff is a private individual, or actual malice, if the plaintiff is a public figure or public official, concerning the truth of the statement.  *Vice v. Kasprzak*, 318 S.W.3d 1, 12 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *WFAA-TV, Inc. v. McLemore*,

---

[1] The Levines claimed that one of the other defendants in this case, New First Bank, had permitted a draw on their forged signatures for distribution to the homebuilders on the account the Levines had opened to pay the homebuilders. This issue was submitted to the jury and resulted in a jury finding that the Levines had signed the draw.  Thus, the Levines' own honesty was at issue in the trial. While it is interesting to speculate whether this finding colored the jury's view of the case, the jury's finding on the Levines' claim against New First does not alter the law or the facts applicable to SSHI's defamation claim.

978 S.W.2d 568, 571 (Tex. 1998)). "[A] private individual may recover damages from a publisher or broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false." *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976); *A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 82–83 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.).

All assertions of opinion are protected by the First Amendment of the United States Constitution and Article 1, Section 8 of the Texas Constitution. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S. Ct. 2997, 3007 (1974). "Under the First Amendment there is no such thing as a false idea. . . . But there is no constitutional value in false statements of fact." *Gertz*, 418 U.S. at 339–40, 94 S. Ct. at 3007. Thus, to establish a cause of action for libel, a plaintiff must prove that "the defendant published a false, defamatory statement of fact, rather than an opinion," or "[i]n other words, the plaintiff must prove that the statements contained false, defamatory facts rather than opinions or characterizations." *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 198 (Tex. App.—Corpus Christi 2003, no pet.).

"For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable." *Miranda v. Byles*, 390

7

S.W.3d 543, 550 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (quoting *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.—Tyler 2008, pet. denied)); *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S. Ct. 2695, 2706 (1990); *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002). "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013). Moreover, a statement that cannot reasonably be interpreted as stating actual facts about an individual is not actionable. *Milkovich*, 497 U.S. at 20, 110 S. Ct. at 2706; *Miranda*, 390 S.W.3d at 550.

Whether a statement is an opinion or a statement of fact is a question of law for the courts. *Carr*, 776 S.W.2d at 570; *Bannert*, 112 S.W.3d at 198. The threshold issue of whether words are capable of defamatory meaning is also a question of law for the courts. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Vice*, 318 S.W.3d at 17; *Bannert*, 112 S.W.3d at 198.

The test as to whether words or statements are defamatory is the reasonable person test. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004); *Vice*, 318 S.W.3d at 17. "The analysis for distinguishing between an actionable statement of fact and a constitutionally protected expression of opinion focuses on the statement's verifiability and the entire context in which it was made." *Vice*, 318 S.W.3d at 18. A statement is capable of defamatory meaning if it is both false

and injurious to the reputation of the person about whom it is made. *See Casso v. Brand*, 776 S.W.2d 551, 554 (Tex. 1989) (citing *Gertz*, 418 U.S. at 339–40, 94 S. Ct. at 3007, and *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964)). The courts construe the statement as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive it. *Vice*, 318 S.W.3d at 17; *Bannert*, 112 S.W.3d at 198.

## 2. *Substantial Truth*

Texas courts use the "substantial truth" test to determine the falsity of a factual statement. *Neely*, 418 S.W.3d at 63–64; *Vice*, 318 S.W.3d at 17 & n.9. The requirement that a published account be true is satisfied if it is substantially correct. *Tex. Monthly, Inc. v. Transamerican Natural Gas Corp.*, 7 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 1999, no pet.). A statement is substantially true, and thus not actionable, if, in the mind of the average person who reads the statement, the allegedly defamatory statement is not more damaging to the plaintiff's reputation than a truthful statement would have been. *Neely*, 418 S.W.3d at 63; *Klentzman v. Brady*, 312 S.W.3d 886, 899 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Tex. Monthly, Inc.*, 7 S.W.3d at 805. Although it may greatly exaggerate the libel-plaintiff's alleged misconduct that was the subject of a judicial proceeding, a published statement is substantially true if an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the

exaggeration. *Tex. Monthly, Inc.*, 7 S.W.3d at 805–06 (holding that defendant need not prove truth of allegations it repeats regarding judicial proceedings; rather, it need only prove that statements are "fair, true, and impartial" account of trial record).

### 3. Privilege

"[A] qualified privilege exists under the common law when a statement is made in good faith and the author, recipient, a third person, or one of their family members has an interest that is sufficiently affected by the statement." *Neeley*, 418 S.W.3d at 62; *Saudi v. Brieven*, 176 S.W.3d 108, 118 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (quoting *Grant v. Stop-N-Go Mkt. of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.)); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (illustrating doctrine of legal excuse and privilege in employer/employee context and holding that "an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing," which "remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate"). In addition, "the common law has recognized a judicial proceedings privilege since at least 1772 for parties, witnesses, lawyers, judges, and jurors." *Neely*, 418 S.W.3d at 62.

## B. Application of the Law to the Facts

I would hold that, under the circumstances of this case, Levine's statements in his email to Hettig cannot support a finding of defamation. Levine's statement that SSHI was a "crook" is a statement of opinion that lacks objective verifiability; any objectively verifiable statements in the email were, as a matter of law, substantially true; and all of Levine's statements in the email were protected by privilege.

In response to Hettig's inquiry about the condition of his unfinished home, Levine responded with his opinion that his former homebuilders were "2 crooks." When examined in the entire context in which it was made, this statement does not convey a fact, but an opinion or characterization of Levine's relationship with his builders that will not support a finding of defamation liability. *See Gertz*, 418 U.S. at 339–40, 94 S. Ct. at 3007 (stating, "Under the First Amendment there is no such thing as a false idea"); *Carr*, 776 S.W.2d at 570 (holding that, by contrast to false statements of fact injurious to reputation, all assertions of opinion are protected by First Amendment of United States Constitution and Article 1, Section 8 of Texas Constitution)

Levine called SSHI a "crook" in his email to Hettig while Levine had litigation pending against SSHI alleging fraud, theft, and deceptive trade practices, as well as negligence and breach of contract, and he had already obtained a

11

judgment for fraud against his other builders mentioned in the email, Mark Blake and M&A Custom Homes. Hettig—the recipient of the email—responded to it by stating that he was not concerned about the Levines' troubles with their builders. Thus, Hettig himself construed the allegedly false statement of "fact" that the Levines' homebuilders were "2 crooks" as a statement of opinion that reflected Levine's perception and characterization of his builders, not as an objectively verifiable statement of fact about the builders. *See Vice*, 318 S.W.3d at 17 (courts construe statement as a whole in light of surrounding circumstances based on how person of ordinary intelligence would perceive it); *Bannert*, 112 S.W.3d at 198 (to establish cause of action for libel, "the plaintiff must prove that the statements contained false, defamatory facts rather than opinions or characterizations"); *see also Miranda*, 390 S.W.3d at 550 (for statement to be actionable in defamation, it must expressly or impliedly assert objectively verifiable facts).

At most, Levine's statement that his builders were "2 crooks" was a non-actionable exaggeration of his builders' conduct based on the acts for which he had sued both Blake and M&A Homebuilders and SSHI—conduct for which Levine had already obtained a judgment against Blake and M&A Homebuilders prior to sending his email to Hettig. *See Tex. Monthly, Inc.*, 7 S.W.3d at 805–06 (stating that, although it may greatly exaggerate conduct that is subject of defamation

proceeding, published statement is substantially true if ordinary reader would not attach any more opprobrium to subject's conduct merely because of exaggeration).

The only objectively verifiable statements Levine made were the truthful statements that he had filed two lawsuits against his builders and that Hettig could look up the pleadings if he wanted to know about "the injustice occurring in our community." These statements were true to the extent they had any objectively verifiable content. In the case of the other builders, Mark Blake and M&A Home Builders, the lawsuit resulted in a judgment in favor of the Levines for fraud. In the instant suit, although the jury did not find fraud, theft, or deceptive trade practices by SSHI, those questions were submitted to it, showing grounds on which reasonable minds could differ. And the jury did find breach of contract by SSHI.

Moreover, the underlying statements regarding the builders' conduct set out in the pleadings in this case and in the prior litigation to which Levine referred Hettig were privileged both by the common-law privilege for statements made in good faith in a matter of mutual interest and by the judicial-proceedings privilege.

First, Hettig, the recipient of Jonathan Levine's email, was interested in the subject matter with respect to which Levine's comment was made—the unfinished state of the Levines' home and its effect on property values in the subdivision in which they both had homes. Thus, these statements were privileged because they were made in good faith to respond to an inquiry about a matter of mutual interest

13

affecting both the author (Levine) and the recipient (Hettig). Second, the underlying statements were privileged in that the allegations that the builders had committed fraud and various other bad acts were stated in pleadings in judicial proceedings—one of which the Levines had won and one of which is the instant litigation, in which SSHI claimed defamation based on Levine's expression of his opinion of its conduct in his email to Hettig.

No claim for defamation can properly be based on a party's good-faith pleadings, or his characterization of his pleadings, by the opposing party in the same ongoing litigation. Nor can a defamation claim properly be based on the defamation defendant's communication of the subject matter of his pleadings to a third party with respect to a matter in which they are both interested. I would hold, therefore, that SSHI's defamation claim is entirely improper and legally insupportable, and that it cannot support a claim for defamation. *See Neely*, 418 S.W.3d at 62 (setting out judicial-proceedings privilege protecting statements made in pleadings and also common-law privilege for statement made in good faith in which recipient or third person has an interest sufficiently affected by it); *Saudi*, 176 S.W.3d at 118 (setting out qualified privilege to make statement in good faith on subject matter in which speaker has common interest with other person); *see also Randall's Food Mkts.*, 891 S.W.2d at 646 (developing doctrine of legal excuse in employer/employee context and recognizing "a conditional or qualified privilege

14

that attaches to communications made in the course of an investigation" and remaining "intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate"). Here, the judgments of the trial court and of this panel are particularly egregious in that they permit a defendant in non-frivolous litigation to sue the plaintiff for defamation based on the plaintiff's pleadings in the same non-frivolous suit, in violation of the long-established judicial-proceeding privilege. *See Neely*, 418 S.W.3d at 62.

Given the privileges to which Levine's email was subject, SSHI would not only have had to prove that the statement was objectively verifiable and false, but also that it was made with actual malice in order to recover damages based on any false and objectively verifiable statement made by Levine in the email. *See Randall's Food Mkts.*, 891 S.W.2d at 646 (stating that to recover for defamation based on statements that are protected by privilege, plaintiff must establish actual malice and stating, "In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth"). Here, even if SSHI's claims had supported Levine's liability for defamation—which they did not—SSHI made no showing of malice. Rather, a finding of malice was precluded by the jury's answers to questions in the charge. Although the jury charge asked the jurors to determine whether Levine's statements were made with malice, the charge also expressly instructed them not to

answer that question unless they found unanimously that Levine had defamed SSHI. Because the verdict was not unanimous, the jurors did not answer the question. Therefore, no damages could properly have been awarded for these statements.[2]

Under these circumstances, I find it impossible to agree with the majority that the defamation claim against Jonathon Levine based on his alleged defamation of SSHI in his email to Hettig is capable of supporting an award of damages in any amount, much less the $360,000 judgment rendered by the trial court. Rather, in my view, this award unconstitutionally punishes Jonathan Levine for his exercise of his constitutional First Amendment right to free speech. *See Gertz*, 418 U.S. at 339–40, 94 S. Ct. at 3007; *Carr*, 776 S.W.2d at 570 (holding that all assertions of opinion are protected).

---

[2] No evidence was introduced to support the damages improperly awarded SSHI on its defamation claim against Jonathan Levine. The Levines complain on appeal that the jury question regarding damages failed to distinguish between defamation per se, in which damages may be presumed, and defamation per quod, in which damages must proved. They also complain that the trial court, over objection, required SSHI to carry the burden of proving falsity by extrinsic evidence, rather than requiring the Levine to prove the substantial truth of his statement as a defense. Thus, they argue, the case was necessarily submitted to the jury on a theory of defamation per quod, which requires proof of damages, of which there were none. *See Tex. Disposal Sys. Landfill v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied) ("Statements that are defamatory per quod are actionable only upon allegation and proof of damages."). I note this issue as an additional ground to find not only that the defamation claim made by SSHI against Levine was unactionable, but also that the evidence was legally insufficient to support the damages awarded SSHI against Jonathan Levine.

## Conclusion

I would reverse the judgment of the trial court and render judgment declaring that SSHI take nothing by its defamation claim.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.