**Opinion issued November 16, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00630-CV

———————————

## GEORGE WOOD, Appellant

## V.

## MATTHEW D. WIGGINS, JR., Appellee

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 11-CV-0336

## O P I N I O N

Appellant George Wood appeals from a judgment entered after a bench trial

on Wood's and appellee Matthew D. Wiggins, Jr.'s competing claims arising out of

their oral agreements to buy, fix, and sell distressed properties acquired at

foreclosure or tax sales. In twelve issues on appeal, Wood argues: (1) there is no

final, appealable judgment; (2) there is no basis for a partition; (3) the statute of limitations does not bar his claims; (4) the statute of frauds does not apply; (5) the trial court erred in applying laches; (6) the trial court erred in ordering a contingent remedy; (7) the doctrine of unclean hands does not bar his equitable claims; (8) the trial court erred by finding against him on his breach of contract claim; (9) the trial court erred in failing to find damages or in the amount of damages awarded; (10) there is insufficient evidence to support the trial court's finding that he had no interest in the Hidden Lake property; (11) he was entitled to attorney's fees based on Wiggins's breach of contract; and (12) the trial court abused its discretion in admitting a hearsay document related to the settlement of accounts as to six properties.

Because we hold that the trial court's judgment did not properly reimburse Wood for the $259,208.76 which the trial court found, and the parties agreed, was owed to Wood for various expenses on a number of jointly owned properties, we modify the judgment to provide that after the net proceeds from the sale of the five properties are equally divided between Wood and Wiggins, the sum of $259,208.76 should be subtracted from Wiggins's share and awarded to Wood.

We affirm the judgment as modified.

**Background**

Wood and Wiggins are experienced real estate investors who met in 2004 during a foreclosure sale. Beginning in May 2006, Wood and Wiggins agreed to jointly purchase properties together, and sometimes included others in the purchases, with the intent of repairing and selling the properties "within a reasonable time." The properties were purchased at tax or foreclosure sales. Profits and losses on each property would be split according to the proportionate share of ownership. The parties had no written agreement or established policies about how to handle the property acquisition, management, rental, or sale of the jointly owned properties.

On some occasions, Wood would purchase the property to be co-owned by Wiggins (and sometimes other co-owners). On other occasions, Wiggins would purchase the property to be co-owned by Wood (and sometimes other co-owners). At some point and by some method (either repayment or offset from another property) the non-purchasing co-owner would reimburse the purchasing party for his portion of the property, which would be equally owned by all parties. Deeds would be issued to each owner to file with the respective county. There was never a particular or consistent deadline or method for repayment. Repayment could occur days, weeks, months or even years later without complaint by any owner.

Between 2006 and 2008, Wood and Wiggins bought, sometimes jointly and sometimes with other co-owners, the following properties:

| Property | Bought | Sold |
|---|---|---|
| 303 22nd Avenue North, Texas City, TX 77590<br><br>("22nd Avenue") | November 6, 2006 | STILL OWNED |
| 4401 24th Street East; Dickinson, TX 77539<br><br>("24th Street") | August 2006 | May 2007 |
| 4426 Waverly Canyon, League City, TX 77573<br><br>("4426 Waverly Canyon") | April 2007 | REDEEMED – July 2009 |
| 4430 Waverly Canyon, League City, TX 77573<br><br>("4430 Waverly Canyon") | April 2007 | REDEEMED – July 2009 |
| 2410 East Bayshore Drive, San Leon, TX 77539<br><br>("Bayshore Drive") | February 6, 2007 | STILL OWNED |
| 611 Biscayne Bend, League City, TX 77573<br><br>("Biscayne Bend") | April 2007 | REDEEMED – July 2009 |
| 4427 Champions Court, League City, TX 77573<br><br>("Champions Court")[1] | December 5, 2006 | February 15, 2007 |
| 923 Dogwood Road, Kemah, TX 77565<br><br>("Dogwood Road") | October 2006 | February 2008 |
| 2002 Fairfield Court South, League City, TX 77573<br><br>("Fairfield Court") | October 6, 2006 | STILL OWNED |

---

[1]  The parties dispute ownership of Champions Court. Wood contends he alone purchased the property.

| Property | Bought | Sold |
|---|---|---|
| 121 Hidden Lake Drive, League City, TX 77573 <br><br> ("Hidden Lake")[2] | February 5, 2008 | February 7, 2012 |
| 605 Jennings Street, Texas City, TX 77590 <br><br> ("Jennings Street") | February 6, 2007 | STILL OWNED |
| 16607 John Silver Road, Jamaica Beach, TX 77554 <br><br> ("John Silver Road") | May 2, 2006 | February 12, 2007 |
| 1321 Lone Oak Drive, League City, TX 77573 <br><br> ("Loan Oak Drive") | August 2007 | May 2, 2008 |
| 401 Oaklawn Street, League City, TX 77573 <br><br> ("Oaklawn Street") | February 6, 2007 | STILL OWNED |
| 730 Oklahoma, Bacliff, TX 77518 <br><br> ("Oklahoma") | October 4, 2007 | June 2, 2009 |
| 2634 Pueblo Court, League City, TX 77573 <br><br> ("Pueblo Court") | May 1, 2007 | June 23, 2008 |
| 2802 Sealy Avenue, Galveston, TX 77550 <br><br> ("Sealy Avenue") | January 2, 2007 | STILL OWNED |
| 211 Sharnoll Circle, League City, TX 77573 <br><br> ("Sharnoll Circle") | December 5, 2006 | May 20, 2008 |

---

[2]    The parties dispute ownership of Hidden Lake. Wiggins contends he alone purchased Hidden Lake with funds borrowed from Wood, and that he repaid Wood for the entire purchase price a few days later.

| Property | Bought | Sold |
|---|---|---|
| 2205 Southern Hills Drive, League City, TX 77573 ("Southern Hills Drive") | January 2, 2007 | July 29, 2009 |
| 1101 Tremont Street, Galveston, TX 77550 ("Tremont Street") | September 4, 2007 | STILL OWNED |
| 639 Warsaw Drive, Hitchcock, TX 77563 ("Warsaw Drive") | May 1, 2007 | August 29, 2008 |

Many of the parties' joint properties were damaged by Hurricane Ike in September 2008. Wiggins wanted to sell all the jointly owned properties, many at a loss, but Wood wanted to keep the properties indefinitely. After Hurricane Ike, Wood and Wiggins did not jointly acquire any additional property.

In March or April 2007, Wiggins purchased three properties at a tax sale: (1) 4430 Waverly Canyon, (2) 611 Biscayne Bend, and (3) 4426 Waverly Canyon (collectively, the "Waverly Canyon Properties"). On April 4, 2007, Wood paid Wiggins $135,000—his 50 percent share of the $270,000 purchase price for the Waverly Canyon Properties. That same month, Wiggins signed deeds to Wood for a one-half interest in the Waverly Canyon Properties. Wood testified he was not able to record the deeds because they had no property descriptions. Wood did not record the deeds to the Waverly Canyon Properties until September 27, 2010.

For properties bought at a tax sale, the original owner or person who owed the back taxes has a certain amount of time—two years for homestead properties and six months or 180 days for non-homestead properties—in which to seek a redemption of the property by paying the purchase price plus a penalty. JPMorgan Chase Bank, N.A. ("Chase") held first lien mortgages on the Waverly Canyon Properties and, as a non-homesteader, had six months in which to enforce its right to redemption of these properties.

Chase sued Wiggins in April 2008 to enforce its right to redemption. In May 2009, the trial court entered summary judgment in the redemption lawsuit in favor of Chase's successor, the Bank of New York Mellon ("BNYM"), finding that the Waverly Canyon Properties were redeemed. As a result, BNYM tendered the $348,714.17 redemption premium to Wiggins, who was the sole title holder. As Wood was not a record-title holder to the Waverly Canyon Properties, he was not made a party to the redemption lawsuit. Wiggins admitted he did not inform Wood in writing of the redemption lawsuit, or otherwise involve him in the proceedings, though he testified that Wood was aware of the lawsuit.

After receiving the redemption premium, Wiggins executed redemption deeds to the original owners. Thereafter, BNYM foreclosed its liens against the Waverly Canyon Properties, became the owners, and conveyed the properties to third parties, warranting that it was conveying a 100 percent fee-simple interest. It was not until

7

September 27, 2010, that Wood recorded his deeds to the Waverly Canyon Properties. BNYM filed the underlying lawsuit against Wood and Wiggins, seeking a declaratory judgment as to the validity and effect of the redemption deeds and Wood's late-recorded deeds. The trial court granted BNYM summary judgment, and the case proceeded on Wood's and Wiggins's crossclaims against each other.

Wood filed his original crossclaim against Wiggins on May 11, 2011, alleging breaches of contract and fiduciary duty related to the Waverly Canyon Properties (which he referred to in his crossclaim petition as the "Subject Properties"). Wood also included breach of contract and breach of fiduciary duty claims related to what he termed "Additional Properties," which he alleged "were acquired on the same basis as described above, i.e., a contract whereby Wood and Wiggins each paid or contributed fifty percent of the purchase price of the property, with an understanding that Wood would receive fifty percent of any price, gain, profit, revenue or rentals derived from such property." Wood did not specifically identify or describe any piece of real property that he contended fell within the category of "Additional Properties."

In response, Wiggins filed special exceptions on March 19, 2012, challenging the vague allegations related to the "Additional Properties" and requesting that the trial court order Wood to replead. On April 16, 2015, Wood filed his First Amended Cross Action and again referred only to "Additional Properties" without further

8

description. Wiggins again filed special exceptions on February 11, 2016, which were granted by the trial court on March 30, 2016. After almost five years of litigation, Wood identified the "Additional Properties" for the first time when he filed his second amended crossclaim on March 31, 2016. In his second amended crossclaim, Wood included the above-listed properties (other than the Waverly Canyon Properties) as "Additional Properties." Wiggins filed a counterclaim against Wood seeking equitable partition of seven of the properties that were still jointly owned by the parties.

During the bench trial, the parties settled their claims as to several properties. The case proceeded on the remainder of the parties' respective claims. The trial court rejected a number of Wood's claims as to various properties but concluded that Wood was entitled to reimbursement in the amount of $259,208.76. The trial court also concluded that five of the properties still jointly owned by the parties could not be fairly partitioned and ordered a receiver to be appointed to effectuate a sale of those properties.

The trial court included findings of fact and conclusions of law in its final judgment, to which Wood objected. Wood requested that the trial court issue separate findings of fact and conclusions of law and moved that the trial court modify its judgment and for a new trial. The trial court issued separate findings of fact and

9

conclusions of law but did not modify the judgment. Wood's motion for new trial was overruled by operation of law.

**General Standards of Review**

In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Miranda v. Byles*, 390 S.W.3d 543, 553 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In resolving factual disputes, the factfinder may believe one witness and disbelieve others, and it may resolve any inconsistencies in any witness's testimony. *Id.* (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986)). In making credibility determinations, the factfinder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). Even uncontroverted expert testimony is not binding on a factfinder if the subject of the testimony is not one for experts alone. *Id.* But the factfinder is not "free to believe testimony that is conclusively negated by undisputed facts." *Id.*

A trial court's factual findings, express and implied, are not conclusive and may be challenged for legal and factual sufficiency of the evidence. *Miranda*, 390 S.W.3d at 553. We review the sufficiency of the evidence supporting a trial court's challenged fact findings by applying the same standards we use in reviewing the

sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

We will sustain a legal-sufficiency, or "no-evidence," challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. In making this determination, we credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* If the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822. If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). But "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)

11

In reviewing factual sufficiency, we consider and weigh all the evidence supporting and contradicting the challenged finding and will set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Miranda*, 390 S.W.3d at 553. We may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

We apply a de novo standard to review a trial court's conclusions of law in a bench trial and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *City of Keller*, 168 S.W.3d at 822; *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). If we determine a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *BMC Software*, 83 S.W.3d at 794.

We will not set aside a judgment because of conflicting findings of fact if the conflict can be reconciled. *Bowman v. Stephens*, 569 S.W.3d 210, 224 (Tex. App.—Houston [1st Dist.] 2018, no pet.). And we must reconcile apparent conflicts if there is any reasonable basis to do so. *Id.*

**Finality of Judgment**

In his first issue, Wood argues that the trial court's "willful violation" of Texas Rule of Civil Procedure 299a—by including findings of fact and conclusions of law

in the judgment—resulted in a "mess" that prevents him from "discern[ing] the basis or effect of the trial court's 'judgment.'" *See* TEX. R. CIV. P. 299a.[3] Relying on this Court's decisions in *Frommer v. Frommer*, 981 S.W.2d 811 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd), and *Guridi v. Waller*, 98 S.W.3d 315 (Tex. App.—Houston [1st Dist.] 2003, no pet.), Wood contends the findings and conclusions in the judgment may not be considered on appeal. According to Wood, if those impermissible findings and conclusions are "ignore[d]," the judgment is left with only three sentences which do not contain sufficient, if any, decretal language to create a final judgment. Without a final judgment, Wood argues this Court lacks jurisdiction to consider this appeal. Because the finality of a judgment implicates appellate jurisdiction, we review this issue de novo. *See Jack M. Sanders Family Ltd. P'ship v. Roger T. Fridholm Revocable Living Tr.*, 434 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("A final judgment or other appealable interlocutory order is a prerequisite of this court's jurisdiction, and the question whether appellate jurisdiction exists cannot be waived or settled by agreement of the parties."); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993) (subject matter jurisdiction cannot be waived and may be raised for the first time on appeal).

---

[3]     Although Wood argues that Rule 299a prohibits findings of fact and conclusions of law from being included in a judgment, Rule 299a only states that it applies to findings of fact; conclusions of law are not mentioned. *See* TEX. R. CIV. P. 299a.

13

Texas Rule of Civil Procedure 299a provides:

> Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.

TEX. R. CIV. P. 299a.

Interpreting Rule 299a in *Frommer*, this Court held that "[f]indings of fact and conclusions of law shall not be recited in a judgment. If they are, they cannot form the basis of a claim on appeal." 981 S.W.2d at 814. Later, in *Guridi*, this Court reaffirmed the rule in *Frommer* that "findings of fact and conclusions of law shall not be recited in a judgment," and held that because the judgment there "improperly recited the fraud findings . . . [t]he separately-filed findings of fact control." *Guridi*, 98 S.W.3d at 317.

In more recent cases, this Court has noted that although a trial court errs in including findings of fact in its judgment, findings of fact in a judgment are accorded probative value "so long as they are not in conflict with findings recited in a separate document." *Gonzalez v. Razi*, 338 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (internal quotation omitted); *see also James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 364 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that although "trial court erred by reciting its findings of fact in the judgment," record contained no other findings of fact with

which the trial court's findings could conflict and, therefore, trial court's findings were accorded probative value).

Here, Wood makes no argument that the trial court's judgment conflicts with the later-filed findings of fact. Instead, Wood attempts to use the above-cited cases discussing which findings are reviewable on appeal to support his argument that the trial court's judgment lacks finality. But none of the above cases address the finality of a judgment that impermissibly contains findings of fact. Nor have we found a case addressing that issue. Moreover, even if we were required to "ignore" the findings of fact contained in the final judgment, as Wood urges, the rules related to inconsistent findings do not apply to conclusions of law because all conclusions of law are reviewed de novo as legal questions. *Ring & Ring v. Sharpstown Mall Tex.*, *LLC*, No. 01-16-00341-CV, 2017 WL 3140121, at *6–7 (Tex. App.—Houston [1st Dist.] July 25, 2017, no pet.) (mem. op.) (citing *BMC Software*, 83 S.W.3d at 794).

Regardless of whether the findings contained in the judgment must be ignored on appeal, the final judgment entered by the trial court contained clear and unequivocal language as to its finality, and we see no basis for holding that it is not a final, appealable judgment.

Generally, "an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). A judicial decree is final when it disposes of all issues and all parties. *Id.* Because a judgment or order need not be in

any particular form or contain any particular language, whether a judicial decree is a final judgment must be determined from its language and the record in the case. *In re R.R.K.*, 590 S.W.3d 535, 540 (Tex. 2019). "Neither [t]echnical formality nor particular phraseology are required for finality so long as the judgment is expressed in language which is significant in common understanding and parlance." *In re Guardianship of Jones*, No. 20-0439, 2021 WL 4228048, at *3 (Tex. Sept. 17, 2021) (internal citation and quotations omitted). "When an order finally disposes of all claims and all parties in clear and unequivocal language, it is a final order. *In re R.R.K.*, 590 S.W.3d at 540 (internal quotations omitted). If, however, an order's finality is not "clear and unequivocal," then a reviewing court must examine the record to determine whether the trial court intended the order to be final. *Lehmann*, 39 S.W.3d at 205–06.

The Texas Supreme Court has long recognized a presumption of finality for judgments that follow a conventional trial on the merits. *Vaughn v. Drennon*, 324 S.W.3d 560, 562 (Tex. 2010); *see also Lehmann*, 39 S.W.3d at 205 ("[W]e have tried to ensure that the right to appeal is not lost by an overly technical application of the law . . . . Simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal."); *N. E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966) ("When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set

16

for a conventional trial on the merits . . . it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties."). A Mother Hubbard clause—"a recitation that all relief not expressly granted is denied"—can indicate finality after a trial on the merits. *Lehmann*, 39 S.W.3d at 203–04. Only if there is doubt as to the finality of a judgment rendered after a conventional trial may the appellate court review the record to resolve the issue. *See In re R.K.K.*, 590 S.W.3d at 541.

Here, the final judgment, rendered after a conventional trial on the merits, unequivocally recites that "[a]ny relief not granted herein is denied" and that it is a "final, appealable judgment that resolves all matters between all parties." This language follows the trial court's numerous legal conclusions expressly stating that Wood shall "take[ ] nothing" as to his claims on various properties; awarding reimbursement on others; concluding that five properties "cannot be fairly partitioned"; and appointing a receiver to conduct a public sale of those properties, and then distribute the proceeds to "Wood in the amount of $259,208.76," with "the remainder to Wood and Wiggins, equally." Wood focuses on the fact that the judgment does not use specific language such as "ordered," "decreed," or "adjudged." But no magic language is required for finality, and as stated above, the final judgment expressly states that it disposes of the parties' claims and is intended to be a final, appealable judgment. *See In re Guardianship of Jones*, 2021 WL

17

4228048, at *3 (holding that probate order was final and appealable even though it did not contain any decretal language, such as "ordered, adjudicated, and decreed," because it granted the motions to dismiss and expressly stated it was "final order" that constituted "the dismissal of the Bill of Review filed in th[at] case").

The trial court's intent to render a final, appealable judgment that resolved all matters between the parties is clear. *See Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) ("Although no 'magic language' is required, a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable."); *Lehmann*, 39 S.W.3d at 206 ("A statement like, 'This judgment finally disposes of all parties and all claims and is appealable', would leave no doubt about the court's intention."). There is no equivocation or doubt in the language used sufficient to overcome the presumption of finality or to require us to look to the record to determine whether the judgment is indeed final. *See Bella Palma*, 601 S.W.3d 799 at 801–02; *Vaughn*, 324 S.W.3d at 562–63. Irrespective of the trial court's inclusion of findings of fact in the final judgment, the judgment was "final and appealable because there was no question the trial court intended it to be so." *Bella Palma*, 601 S.W.3d at 802; *see also Lehmann*, 39 S.W.3d at 206 ("An express adjudication of all parties and claims in a case is not interlocutory merely because the record does not afford a legal basis for the adjudication. In those circumstances, the order must be appealed and reversed.").

18

Therefore, based on its unambiguous language, we hold that the trial court's final judgment is final and appealable. As such, we overrule Wood's first issue.

## Partition

In his second issue, Wood argues that the trial erred in both (1) ordering the partition by sale of five of the properties jointly owned by Wood and Wiggins and (2) appointing a receiver to effectuate such a sale because Wiggins gave up his right to partition. Wood notes that although the right to partition is absolute, parties may expressly or implicitly agree to limit or modify the right to partition. According to Wood, Wiggins did exactly that, as evidenced by the trial court's finding that Wood and Wiggins each agreed that whoever "took control of the [respective] property at the outset decided what to do with the property – rent, sell, hold, etc."

## A.     Standard of Review

The rules of equity govern the trial court's partition of property. *Williams v. Mai*, No. 01-11-00611-CV, 2012 WL 6644704, at *4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet.) (mem. op.). "A trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief.: *Bowman v. Stephens*, 569 S.W.3d 210, 223 (Tex. App.—Houston [1st Dist.] 2018, no pet.). An appellate court will not disturb a trial court's ruling on a claim seeking equitable relief unless it is arbitrary, unreasonable, or without regard to guiding legal principles. *Id.* When facts are disputed, a trial court does not abuse its discretion if

some of the conflicting evidence supports its decision. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005).

**B.    Analysis**

In his counterclaim, Wiggins sought the "equitable remedy of partition by sale" of the properties still jointly owned with Wood: (1) Fairfield Court, (2) Sealy Avenue, (3) Oaklawn Street, (4) Tremont Street, and (5) 22nd Avenue.[4] Texas law will not force a reluctant joint owner of real property to maintain joint ownership. *Bowman*, 569 S.W.3d at 220. Instead, a joint owner of real property "may compel a partition of the interest or the property among the joint owners . . . under [Chapter 23 of the Property Code] and the Texas Rules of Civil Procedure." TEX. PROP. CODE § 23.001. This right to partition is considered absolute. *Moseley v. Hearrell*, 171 S.W.2d 337, 338 (Tex. 1943); *Bowman*, 569 S.W.3d at 223.

Rule 770 of the Texas Rules of Civil Procedure governs the judicially ordered sale of land held by cotenants. TEX. R. CIV. P. 770. Regarding when real property should be partitioned in kind or partitioned by sale, Rule 770 provides:

> Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it  shall order a sale of so much as is incapable of partition, which sale shall be for cash, or

---

[4]    In his counterclaim, Wiggins initially sought the equitable partition of two additional properties: (1) Jennings Street and (2) Bayshore Drive. At trial, however, Wiggins agreed to no longer seek partition of these properties because they were owned by Wood and Wiggins together with two other co-owners. Wiggins agreed to seek partition of only the remaining five properties that were jointly owned by Wood and Wiggins alone.

upon such other terms as the court may direct, and shall be made as under execution or by private or public sale through a receiver, if the court so order, and the proceeds thereof shall be returned into court and be partitioned among the persons entitled thereto, according to their respective interests.

*Id.* Whether a property can fairly be partitioned in kind is a question of fact for the factfinder to decide. *Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.). Texas law favors partition in kind over partition by sale, and the burden is on the party seeking a sale to justify it. *Id.*

Although owners of land generally have the right to partition their realty, they can waive that right through expressed or implied agreement. *Lichtenstein v. Lichtenstein Building Corp.*, 442 S.W.2d 765, 769 (Tex. App.—Corpus Christi 1969, no writ). If they so agreed, the party who sought a partition will be estopped from asserting such a right. *Benson v. Fox*, 589 S.W.2d 823, 825–26 (Tex. App.—Tyler 1979, no writ); *Odstrcil v. McGlaun*, 230 S.W.2d 353, 354–55 (Tex. App.—Eastland 1950, no writ). Consequently, the relinquishment of the right to partition has been characterized as an estoppel or waiver. *Sherbet v. Bender*, No. 05-14-01047-CV, 2015 WL 7179659, at *2 (Tex. App.—Dallas Nov. 16, 2015, no pet.) (mem. op.); *Williams v. Moody Land & Cattle, L.P.*, No. 07-02-0362-CV, 2005 WL 700975, at *1 (Tex. App.—Amarillo Mar. 28, 2005, no pet.) (mem. op.); *see also Davis v. Davis*, 44 S.W.2d 447, 450 (Tex. App.—Texarkana 1931, no writ)

(holding that the "agreement [not to partition] act[s] as an estoppel against the right to partition or as a waiver of such right").

Here, Wood's argument is that Wiggins waived the right to seek, or is estopped from seeking, partition of these five properties because he agreed that Wood was "in charge of whatever goes on with them." According to Wood, this waiver or estoppel should have precluded the trial court from ordering the partition of these properties and appointing a receiver. But the defenses of waiver and estoppel are affirmative in nature and must be pleaded and proved. TEX. R. CIV. P. 94 ("[A] party shall set forth affirmatively . . . estoppel, . . . waiver, and any other matter constituting an avoidance or affirmative defense."); *Rice Food Markets, Inc. v. Williams*, 47 S.W.3d 734, 736 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("Waiver and estoppel are affirmative defenses that must be pleaded and proved."). Where an affirmative defense such as estoppel or waiver is not pleaded or tried by consent, it is waived. *See In re S.A.P.*, 156 S.W.3d 574, 576 (Tex. 2005).

Given this, it was incumbent upon Wood to affirmatively plead that Wiggins was estopped from partitioning these properties or had waived his right to do so. This, Wood did not do. The only affirmative defense raised in Wood's answer to Wiggins's counterclaim for partition was unclean hands. At trial, counsel for Wood stated that he did not "really agree to [partition of these five properties] for a variety of reasons," but did not argue that Wiggins had expressly or implied contracted away

22

his right to partition.[5] Though Wood raised Wiggins's alleged agreement not to partition and estoppel argument in his motion for new trial, "[a]n affirmative defense that is not pleaded or proved and on which findings are not obtained is waived and cannot be preserved by raising the affirmative defense for the first time in a motion for new trial." *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Having failed to plead the affirmative defenses of estoppel or waiver, Wood has waived his right to challenge the partition and appointment of a receiver on these bases. *See Williams*, 2005 WL 700975, at *1 (holding appellant's objections to introduction of evidence of agreement not to partition were waived because appellant failed to affirmatively plead estoppel or waiver). Accordingly, we overrule Wood's second issue.

### Statute of Frauds

In his fourth issue, Wood contends the trial court erred in applying the statute of frauds.[6] Wood argues that because his oral partnership agreements with Wiggins

---

[5]     Wood's counsel also stated that "at some point, all real estate has to be sold," and although he did not have the authority to commit to anything, he would "discuss with . . . Wood the possibility of entering into a receivership or some other agreement or agreed order from the Court to market the properties."

[6]     Wood challenges the sufficiency of the evidence related to the trial court's findings that the statute of frauds bars his claims as to the following specific properties: (1) Champions Court; (2) Fairfield Court; (3) Hidden Lake; (4) John Silver Road; (5) Loan Oak Drive; (6) Sealy Avenue; (7) Southern Hills Drive; and (8) Warsaw Drive. In his eighth issue, Wood also argues that the trial court erred in failing to

did not involve the conveyance of real property and each oral agreement was capable of being performed within one year, the statute of frauds was inapplicable. In response, Wiggins argues that Wood's argument should be rejected because he fails to demonstrate that the oral agreements to "buy, fix, and sell" could have been performed within a year, there was evidence to the contrary on specific transactions, and the court also found that the parties had oral agreements involving real estate.[7]

## A. Standard of Review and Applicable Law

The statute of frauds concerns problems of proof and exists to prevent fraud and perjury in certain types of transactions by requiring agreements to be in writing and signed by the party to be charged. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex.

find for him on his breach of contract claims as to the Waverly Canyon Properties. Because we find Wood failed to challenge all independent grounds for denying recovery as to Champions Court, we must affirm the trial court's judgment as to this property and do not address the statute of frauds issue as it relates to Champions Court. Likewise, because we find Wood did not prove his claims as to Hidden Lake by a preponderance of the evidence, we do not address the statute of frauds issue as it relates to Hidden Lake.

[7] Wiggins also argues that he satisfied his initial burden to show that the agreement fell within the statute of frauds simply because the evidence was undisputed that any agreement he had with Wood was oral. We disagree. Not all oral agreements will fall within the statute of frauds. Only agreements specifically identified in Section 26.01(b) of the Texas Business and Commerce Code are required to be in writing. *See* TEX. BUS. & COM. CODE § 26.01(a). Thus, it was Wiggins's burden to demonstrate that the agreement between himself and Wood was both oral and was one of the types of agreements specified by Section 26.01(b). *See* TEX. BUS. & COM. CODE § 26.01(a), (b)(2); TEX. R. CIV. P. 94; *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013). Thereafter, the burden would shift to Wood to demonstrate an exception taking the oral agreements out of the statute of frauds. *Dynegy*, 422 S.W.3d at 642–43.

2001); *see also* TEX. BUS. & COM. CODE 26.01(a). The statute of frauds is an affirmative defense and renders a contract that falls within its purview unenforceable. TEX. BUS. & COM. CODE 26.01(a); TEX. R. CIV. P. 94. Here, Wiggins pleaded the statute of frauds as an affirmative defense and thus had the initial burden to establish that the alleged promise fell within the statute of frauds. *See* TEX. BUS. & COM. CODE § 26.01(a), (b)(2); TEX. R. CIV. P. 94. Whether a contract comes within the statute of frauds is a question of law, which we review de novo. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013).

Section 26.01 of the Texas Business and Commerce Code provides that "a contract for the sale of real estate" or "an agreement which is not to be performed within one year from the date of making the agreement" is not enforceable unless it "is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE § 26.01(a)(1), (2), (b)(4), (6).

**B.    Analysis**

With respect to the Waverly Canyon Properties, in April 2007, the parties entered an oral agreement that (1) they would purchase these properties, which were being sold at a tax foreclosure sale; (2) each would pay 50 percent of the purchase price, receive a 50 percent interest in the property, and receive 50 percent of the rents, if any, and profits or losses following a sale; and (3) Wiggins would be in

25

charge of the management, upkeep, and maintenance of these properties. On April 4, 2007, Wood paid Wiggins $135,000, which was half of the purchase price of $270,000 for all three Waverly Canyon Properties. Because only one name can be included on the original deed following a tax sale, only Wiggins's name was included on the deeds for the Waverly Canyon Properties. Per their agreement, Wiggins signed deeds to Wood for his one-half interest in the Waverly Canyon Properties a few days after he purchased the properties. Wiggins testified that rent was collected on one of the three properties almost immediately after the sale and that the other two properties were rented out about two months later. Each was rented until July 2009 until the redemption occurred.

The same, or similar acts, occurred when Wood and Wiggins purchased the other properties (Fairfield Court; John Silver Road; Loan Oak Drive; Sealy Avenue; Southern Hills Drive; and Warsaw Drive). For instance, Wiggins testified that it was generally the practice between he and Wood for whoever bought a property at a tax sale to get the initial deed in his name and then "handle the ownership documentation later," by sending a deed conveying a one-half (or other applicable interest) to the other party or parties. This occurred for a number of properties, including Sealy Avenue, Warsaw Drive, and Fairfield Court. On the others—John Silver Road, Loan Oak Drive, and Southern Hills Drive—the deed to the property was taken in the name of both Wood and Wiggins (and others). Each of these properties was either a

"50/50 deal" between Wood and Wiggins, or they took equal interests in the property along with other co-owners.

We first consider Wood's argument that the agreements were not for the sale of real estate because they were oral partnership agreements "for joint investment and sharing of expenses, losses and profits." We disagree. In support of his argument, Wood cites to *Sewing v. Bowman*, where this Court held that a partnership agreement contemplating dealings in real estate "simply does not involve" transfer or interest in real estate within meaning of the statute of frauds. 371 S.W.3d 321, 330 (Tex. App.—Houston [1st Dist.] 2012, pet denied). This Court concluded that the plaintiff's "claim for redemption of his partnership interest may include an interest in the proceeds from the sale of the two properties without resulting in a transfer of interest in the two properties." *Id.* "Merely because a partnership agreement contemplates transactions in real estate does not transform the partnership itself into a transaction for the sale of real estate, bringing it under the statute of frauds." *Id.*

*Sewing* relied on an earlier case from this Court. *See id.* (citing *Berne v. Keith*, 361 S.W.3d 592 (Tex. App.—Houston [1st Dist.] 1962, writ ref'd n.r.e.)). In *Berne*, the parties agreed that Keith would invest some of his personal funds in a development project and would receive a portion of the profits of the project as compensation for his work performed on the project. 361 S.W.3d at 594–95. This

27

Court considered whether Keith's claims were "to an interest in land, or to a right in land or the proceeds thereof, which cannot be established or enforced upon an oral agreement." *Id.* at 595. The Court recited the majority rule that a "parol partnership agreement or joint enterprise entered into by two or more persons, for the purpose of purchasing and selling real estate or interests therein for speculation, the profits to be divided among the parties, is not within the statute of frauds relating to the sale of lands or an interest therein, and that such an agreement may become effectual and suit maintained thereon, though not in writing." *Id.* at 597. In concluding that the claims asserted by Keith were not to an interest in land, and thus not barred by the statute of frauds, this Court considered it persuasive that the "oral agreement d[id] not expressly or by necessary implication give appellee an interest in the land or in the proceeds from the sale of lands or any part thereof," and "Keith could not require appellants to sell the land or any part thereof, nor could he interfere with appellants' sale of the land for any price or under any conditions." *Id.* at 596–97.

We find the facts of *Sewing* and *Berne* distinguishable. In *Sewing*, the plaintiff alleged that he and Sewing "entered into [a]n agreement in or around 2003 wherein Bowman provided in excess of $260,000 to [Sewing] between 2003 and 2005 as capital for the purpose of acquiring and rehabilitating real property." *Id.* at 324. The agreement provided that the plaintiff and Sewing "were to each own 50 percent of the two properties, *which were held in the name of Sewing and his wife, Patricia*

28

*Sewing*, and the money sent from [the plaintiff] was deposited into the Sewings' checking account." *Id.* (emphasis added). The plaintiff asserted that the goal "was to create a partnership and combine their resources and make a profit on the appreciation in the value of the properties and share in rental income until the properties were later sold." *Id.*

The agreement in *Sewing* thus did not involve any transfer of interest in real property between the plaintiff and Sewing—the properties remained titled in the names of Sewing and his wife. And the plaintiff argued that the agreement did not involve any conveying of title to the property but merely established a venture to profit from its sale. Likewise, in *Berne*, nothing in the parties' agreement gave Keith an interest in the land, and he was "not seeking a transfer of any interest in" the defendant's real estate. 361 S.W.2d at 597. Instead, he sought "an accounting of a share in the profits as *compensation for services rendered* in a project involving speculation in real property which he asserts became due him upon completion of the project." *Id.* (emphasis added).

Unlike in *Sewing* and *Berne*, the agreements between Wiggins and Wood contemplated, and in fact required, a transfer of an interest in real property. The evidence shows the parties agreed to purchase the Waverly Canyon Properties and that each would receive a 50 percent interest in those properties. After Wiggins purchased the Waverly Canyon Properties at the tax sale, having received 50 percent

29

of the purchase price from Wood, Wiggins deeded a fifty percent interest to Wood in each of the three properties. The same is true for the other properties—each involved an agreement to purchase the property in which the property was either deeded to one party, who then deeded the agreed-upon interest to the other party, or to both parties upon purchase. And although Wood claims he is not seeking to enforce an oral agreement to convey real property, he is seeking damages and reimbursement for expenses, purchase price, and profits from the sale of these properties based on his interest in those properties. We do not see a way around concluding that these agreements involved the transfer of an interest in land.

The distinguishing factor between property-related agreements that are barred by the statute of frauds and those that are not is whether the agreement provides for the transfer of an interest in land from one party to another. Those agreements that provide for, contemplate, or require a transfer of an interest in land from one party to another are barred by the statute of frauds. *See Bakke Dev. Corp. v. Albin*, No. 04-15-00008-CV, 2016 WL 6088980, at *3 (Tex. App.—San Antonio Oct. 19, 2016, no pet.) (mem. op., op. on reh'g) (rejecting appellant's argument that partnership was formed for purpose of jointly developing real property and did not require conveyance of land, such that statute of frauds would not apply to oral partnership agreement, where testimony and pleadings showed "contribution" of respective properties would take place through a formal conveyance to partnership); *Carpenter*

*v. Phelps*, 391 S.W.3d 143, 153 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (explaining that partnership agreement requiring transfer of real estate to partnership violates statute of frauds because "an interest in real estate cannot become a partnership asset unless the agreement concerning the property is in writing the same as any other contract concerning the sale of land"); *Mangum v. Turner*, 255 S.W.3d 223, 227 (Tex. App.—Waco 2008, pet. denied) ("Generally, the statute of frauds applies to an oral agreement when the performance promised requires an act that will transfer property in land." (internal quotation omitted)).

Because Wood and Wiggins's oral agreements regarding the Waverly Canyon Properties, as well as the Fairfield Court, John Silver Road, Loan Oak Drive, Sealy Avenue, Southern Hills Drive, and Warsaw Drive properties, contemplated the transfer of an interest of land, Wiggins met his burden to show that the oral agreements fell within the statute of frauds.[8] The burden then shifted to Wood to establish an exception that would take the oral agreements out of the statute of frauds. *See Dynegy*, 422 S.W.3d at 642.

Wood argues that his partial performance of the oral agreements with Wiggins operates to exempt the oral agreements from the statute of frauds, even if they

---

[8] Having concluded that the oral agreements contemplating the transfer of property rights fell within the statute of frauds, we need not address Wiggin's alternative claim that the agreements are barred by the statute of frauds because they could not be performed within one year.

31

involved the sale of real property. But in order to rely on this exception to the applicability of the statute of frauds, Wood was required to plead, prove, and obtain a finding on this exception. *See id.* (holding plaintiff relying on main purpose doctrine as exception to statute of frauds, had burden to plead and establish facts to take verbal contract out of statute of frauds and, where plaintiff failed to secure findings on exception, issue was waived); *Parks v. Landfill Mktg. Consultants, Inc.*, No. 14-02-01243-CV, 2004 WL 1351545, at *5 (Tex. App.—Houston [14th Dist.] June 17, 2004, pet. denied) (mem. op.) (holding because appellees did not plead or try partial performance exception to statute of frauds by consent, it was waived).

Wood did not raise the partial performance exception in any iteration of his crossclaim. Nor do we see evidence in the record that the exception was tried by consent. *See Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (explaining unpleaded issue may be deemed tried by consent when evidence is developed under circumstances indicating both parties understood issue was in case). During opening statements, Wood's counsel addressed the statute of frauds by arguing that he was not suing for "the conveyance of real property, which is what the [s]tatute of [f]rauds speaks to," but rather "the division of the proceeds of the property." He further argued that there was no dispute as to title, only a dispute as to "what was done with the money." He did not raise the issue he raises now, i.e., that even if the agreements involved the sale of real estate (or could

32

not be performed in one year), that partial performance should take the agreements out of the statute of frauds. *See Aguirre v. Pompa*, No. 11-14-00168-CV, 2016 WL 2974817, at *2 (Tex. App.—Eastland May 19, 2016, no pet.) (mem. op.) (holding partial performance exception to statute of frauds was tried by consent, in part, because plaintiff's counsel argued at end of trial that "case law established that 'partial compliance with a verbal agreement is good enough to establish [the existence of] the agreement' and further argued that the record was replete with testimony regarding Appellee's performance of the agreement"). The only reference we can find in the record to the partial performance exception is in Wood's proposed findings of fact and conclusions of law, which were filed *after* trial.

Further, the trial court did not make any finding as to the partial performance exception, and Wood did not file a request for additional or amended findings. Because "it is presumed that all fact findings needed to support the judgment were made by the trial court," a party's failure "to request additional amended findings or conclusions waives the party's right to complain on appeal about the presumed finding." *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Under these circumstances, we conclude that Wood did not plead the partial performance exception or try it by consent. Neither did he secure a finding of fact or conclusion of law from the trial court as to the exception. Therefore, he has waived

it. *Dynegy*, 422 S.W.3d at 642; *Parks*, 2004 WL 1351545, at *4–5. We hold that the oral agreements as to the Waverly Canyon Properties, as well as the Fairfield Court, John Silver Road, Loan Oak Drive, Sealy Avenue, Southern Hills Drive, and Warsaw Drive properties, fall within the statute of frauds, and Wood's claims as to those properties are barred. Accordingly, we overrule Wood's fourth issue.[9]

## Laches

In his fifth issue, Wood argues that the trial court erred in applying the doctrine of laches to bar his claims as to the following six properties: (1) Champions Court; (2) Hidden Lake; (3) John Silver Road; (4) Loan Oak Drive; (5) Southern Hills Drive; and (6) Warsaw Drive. He also challenges the trial court's conclusion of law that his "equitable claims against Wiggins, including breach of fiduciary duty, are barred by . . . laches." According to Wood, Wiggins failed to present evidence of either unreasonable delay or prejudice by changing his position, both of which are elements of the laches defense. *See In re Mabray*, 355 S.W.3d 16, 22–23 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (laches is affirmative defense requiring proof of (1) unreasonable delay in asserting legal or equitable rights, and

---

[9] Because of our disposition of Wood's fourth issue relating to the statute of frauds, we do not address Wood's third issue that the trial court erred in applying the statute of limitations to his claims as to the John Silver Road, Loan Oak Drive, Southern Hills Drive, and Warsaw Drive properties. *See* TEX. R. APP. P. 47.1. Additionally, in his eighth issue, Wood argues that the trial court erred by failing to find in his favor on his breach of contract claim as to the Waverly Canyon Properties. Because we hold that the statute of frauds bars Wood's claims as to these properties, we do not address Wood's eighth issue. *See id.*

(2) good faith change of position by another to his detriment because of unreasonable delay).

Because we hold that Wood's claims as to John Silver Road, Loan Oak Drive, Southern Hills Drive, and Warsaw Drive are barred by the statute of frauds, and that Wood failed to prove by a preponderance of the evidence his claims as to Hidden Lake, we do not address Wood's alternative argument based on laches as to these five properties, leaving only Champions Court. In addition to concluding that laches applied to this property, the trial court also concluded that Wood should take nothing because (1) he "failed to provide adequate notice of his claim as to Champions C[ourt] in his pleadings and in his responses to requests for disclosure" and (2) the statute of frauds barred the claim. Though Wood challenges the trial court's application of the statute of frauds to Champions Court, he does not attack the trial court's conclusion that he failed to provide adequate notice of his claim to this property. Because he fails to challenge one of the trial court's independent grounds for denying recovery as to Champions Court, we must affirm the trial court's judgment as to this property. *See Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("[A]n appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. If an appellant does not, then we must affirm the ruling or judgment.")

Finally, because we conclude below that unclean hands bars Wood's equitable claims, we do not address Wood's alternative argument related to the trial court's application of laches to his equitable claims.

We overrule Wood's fifth issue.

## Fashioning A Remedy

In his sixth issue, Wood contends the trial court erred by fashioning a remedy that is contingent upon the sale of the following five properties: (1) Fairfield Court, (2) Sealy Avenue, (3) Oaklawn Street, (4) Tremont Street, and (5) 22nd Avenue. Wood first argues that because he prevailed on his reimbursement claim, he is entitled to a full award that is not contingent upon or delayed until after the receiver sells the properties. Wood also contends that the trial court's reimbursement award "short[s]" him on the full reimbursement to which he is entitled because the trial court ordered that he be paid the $259,208.76 reimbursement amount first, and then ordered that the remaining amount be split equally between Wood and Wiggins. According to Wood, he should first receive 50 percent of the partition amount, and then the court-ordered reimbursement amount should be taken from Wiggins's 50 percent and added to his total.

We do not agree that the trial court abused its discretion by appointing a receiver and ordering that Wood be reimbursed from the proceeds of the sale of the

five properties that could not be fairly partitioned. As this Court previously observed:

> Pursuant to [Texas Rule of Civil Procedure ] 770, . . . receivers have been appointed in practically every partition case. Rule 770 provides that a receiver may be appointed and property sold if the court "be of the opinion that a fair and equitable division of the real estate, . . . cannot be made . . ." The appointment of a receiver lies within the discretion of the court and may be invoked whether specifically prayed for or not.

*Green v. Doakes*, 593 S.W.2d 762, 764 (Tex. App.—Houston [1st Dist.] 1979, no writ) (internal citations omitted); *see also O & G Carriers, Inc. v. Smith Energy 1986-A P'ship*, 826 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1992, no writ) (noting trial court's appointment of receiver will not be disturbed on appeal unless record reveals clear abuse of discretion).

Moreover, the trial court has both "statutory and inherent authority to enforce [its] orders and decrees beyond their plenary power." *Fuentes v. Zaragoza*, 534 S.W.3d 658, 665 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) ("The general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments."). Texas Rule of Civil Procedure 308 provides trial courts with continuing jurisdiction to enforce judgments. *See* TEX. R. CIV. P. 308; *see also* TEX. GOV'T CODE § 21.001(a) ("A court has all powers necessary for . . . the enforcement of its lawful orders[.]"). We do not agree that Wood's concerns regarding what happens if the proceeds from the sale of the properties are not sufficient to cover his

reimbursement award warrant reversal considering the trial court's power to enforce its judgments.

We do, however, agree that the trial court abused its discretion in not awarding Wood the correct reimbursement amount in the judgment. Under the trial court's final judgment, the $259,208.76 reimbursement amount was to be taken from the net proceeds of the sale of the five properties before any distribution was made to the parties. Such a procedure would result in Wood being reimbursed only in the sum of $129,604.38, since the $259,208.76 payment to him was to be made out of the undivided funds to which he was entitled to half. Meaning, he was already entitled to one-half of the proceeds from the sale of the five properties subject to partition, in addition to any reimbursement amount awarded by the trial court, because both he and Wood owned an undivided one-half interest in these properties. Therefore, the judgment should have provided that *after* the net proceeds from the sale of the five properties were divided equally between Wood and Wiggins, $259,208.76 should be paid from the share of Wiggins to Wood.

We hold that the provisions of the judgment did not properly reimburse Wood for the $259,208.76 found by the trial court, and agreed to by the parties, to be owing to Wood for various expenses on a number of jointly owned properties. Therefore, the judgment of the trial court is modified to provide that after the net proceeds from the sale of the five properties are equally divided between Wood and Wiggins, the

sum of $259,208.76 should be subtracted from Wiggins's share and awarded to Wood. *Cf. Collins v. Collins*, 540 S.W.2d 497, 499 (Tex. App.—Tyler 1976, no writ) (holding trial court failed to award correct amount of reimbursement in divorce action because order provided for reimbursement to be taken out of sale of community residence before any distribution was made to parties, resulting in appellant being reimbursed only half of what was owed because payment was to be made out of undivided community funds).

We sustain this portion of Wood's sixth issue.

## Unclean Hands

In his seventh issue, Wood contends the trial court erred in finding that he had unclean hands. Wood argues that because unclean hands is an affirmative defense, Wiggins had to prove "he has been seriously harmed and the wrong complained of cannot be corrected without applying unclean hands," and Wiggins "utterly failed" to do so. Therefore, according to Wood, there is legally and factually insufficient evidence to support the trial court's unclean-hands findings.

## A.     Standard of Review

To recover in equity, Wood had to have clean hands. *See Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988). Whether to apply the doctrine of unclean hands is committed to a trial court's discretion. *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The doctrine will be

applied only to "one whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *Id.* In addition, the complaining party must show an injury to himself arising from the conduct. *In re Noelle*, 265 S.W.3d 487, 494 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding). "The clean hands maxim should not be applied when the defendants have not been seriously harmed and the wrong complained of can be corrected without applying the doctrine." *In re Jim Walter Homes*, 207 S.W.3d at 899.

However, an appellate court "will not disturb a trial court's ruling on a claim seeking equitable relief unless it is arbitrary, unreasonable, and unsupported by guiding rules and principles." *Sister Initiative, LLC v. Broughton Maint. Ass'n, Inc.*, No. 02-19-00102-CV, 2020 WL 726785, at *29 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.) (quoting *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied)). The trial court "exercises broad discretion in balancing the equities involved in a case seeking equitable relief." *Id.* (quoting *Edwards*, 252 S.W.3d at 836).

B. **Analysis**

The trial court found that because Wood breached his fiduciary duties to Wiggins, he did not have clean hands and, therefore, Wood's "equitable claims against Wiggins, including breach of fiduciary duty, [were] barred by the doctrine

40

of unclean hands[.]" The trial court also made the following specific findings that support this conclusion:

- Nothing in the record indicates that Wiggins or Wood consulted with the other . . . on whether to rent or sell, what repairs or improvements to make, or how much to spend in making such repairs or improvements.

- One owner simply did what he chose to do and then expected the other(s) to pay an equal portion of the costs.

- The evidence indicates that Wood charged Wiggins and other co-owners various management fees and inflated actual expenses to provide additional profit for himself. There is nothing to indicate that any other owner did the same to Wood. There is also nothing to indicate that any co-owner agreed to this arrangement.

- Documentation, if it existed, rarely indicated who paid for what on which occasion. Further, there was no consistent documentation for any given property, nor was there a particular deadline or form for repayment.

- Wood had his own "system" of record keeping, but it was not a consistent, well organized, or reliable system.

- The evidence also indicates that there were inconsistencies, inaccurate entries, missing entries, duplicate or triplicate entries, and items being charged to the wrong properties.

- In many instances, Wood billed Wiggins for expenses but failed to provide any documentation to support those expenses.

- Wood charged management fees to the co-owners of shared properties without their agreement.

- Wood made a profit on the carpet, furniture, fixtures, and supplies he sold to his co-owners in order to repair and refurbish the properties. Yet, he charged these as pass-through costs without informing his co-owners that he was making a profit on these "expenses."

41

- Both Wiggins and Wood collected rents on shared properties without accounting to their co-owners for those rents received and without segregating those monies, which was a breach of their fiduciary duties to each other and to the other owners.

- Wiggins and Wood incurred significant expenses on various properties without informing the other, which was a breach of fiduciary duty to the other.

- Wiggins and Wood also allowed properties to be maintained without making them rentable or otherwise attempting to rent them, thereby incurring costs without income, which was another breach of fiduciary duty to the other.

- Wood did not keep accurate accounts of expenses, passed on inflated expenses to the co-owners without their permission or knowledge so that he made additional profits and did not properly allocate expenses, improperly charged additional fees to the co-owners, and may have billed co-owners for expenses not actually incurred. These were breaches of his fiduciary duties.

- Holding money or rents owed to another co-owner for months or even years was very common between and among Wiggins, Wood, and the other people with whom they shared properties. Withholding money like this was a breach of fiduciary duty by each party.

- After September 2008, the parties ceased to treat each other as partners or joint venturers, as they regarded themselves, and each breached one or more fiduciary duties to the other so that neither has clean hands in their respective dealings with each other on the subject properties.

Wood does not challenge any of the above findings in connection with his unclean-hands argument. Instead, he contends that Wiggins failed to show how he was harmed by Wood's alleged breaches of his fiduciary duties. But the findings set forth above demonstrate harm. For example, the trial court found that Wood passed on inflated expenses to Wiggins and the other co-owners; billed for expenses without

documentation; improperly charged fees to the co-owners; and may have billed the co-owners for expenses not actually incurred. Though Wood argues that Wiggins could not have been harmed because he has yet to pay for any expenses billed, it is those expenses that Wood seeks to recover as damages in this lawsuit. Based on the above-findings and evidence, we hold the trial did not abuse its discretion in applying the doctrine of unclean hands to bar Wood's equitable claims, including his claims for breach of fiduciary duty. *See Grant v. Laughlin Envtl., Inc.*, No. 01-07-00227-CV, 2009 WL 793638, at *8 (Tex. App.—Houston [1st Dist.] Mar. 26, 2009, pet. denied) (mem. op.) ("By breaching his fiduciary duties and committing fraud, [appellant] did not have "clean hands.").

We overrule Wood's seventh issue.

## Preponderance of the Evidence

In his ninth issue, Wood challenges the legal and factual sufficiency of the following findings of fact:

- Finding of Fact 8: "Wood had his own 'system' of record keeping, but it was not a consistent, well organized, or reliable system. Each person and the management company had his/her/its own system of filing which was different from the others. Filing systems and computerized systems changed and had to be reconciled. Data entry was often backlogged for several months or longer."

- Finding of Fact 9: "The evidence also indicates that there were inconsistencies, inaccurate entries, missing, entries, duplicate or triplicate entries, and items being charged to the wrong properties. Many of the records were not clearly labeled for particular properties and could have been for any of his approximately 200 properties."

43

- Finding of Fact 24: "Wood's testimony was based on wholly unreliable records."

- Finding of Fact 31: "Wood's testimony and exhibits were generally unreliable."

He contends that he presented credible evidence of the right to reimbursement and damages as to Tremont Street, Jennings Street, and Oaklawn Street in the following amounts:

- Tremont Street: $62,112;

- Jennings Street: $12,211.73; and

- Oaklawn Street: $16,100.

In contrast, the trial court concluded that the following amounts as to each property were owed between the parties:

- Tremont Street: $36,400 (Wiggins owed to Wood);

- Jennings Street: $4,288 (Wood owed to Wiggins); and

- Oaklawn Street: $9,230 (Wiggins owed to Wood).

Wood argues that the trial court erred in failing to award him an award of monetary damages in the amounts he asserts were established by his credible evidence as to these three properties.[10]

---

[10] Wood also challenges the amount of the award as to the following seven properties: (1) Hidden Lake, (2) Lone Oak Drive, (3) Warsaw Drive, (4) John Silver Road, (5) Fairfield Court, (6) Sealy Avenue, and (7) Southern Hills Drive. Because of our disposition of alternative arguments relating to these properties, we do not address this argument as it applies to these seven properties. *See* TEX. R. APP. P. 47.1.

Wood argues that he presented two forms of evidence to support his claims for reimbursement and damages: (1) Peachtree Accounting Records and (2) Support Documents consisting of documents from third party vendors, taxing authorities, utilities, and bank records.

He makes two arguments with respect to these documents. First, Wood argues that the trial court failed to consider the Support Documents, which include documents from the Galveston County Tax Office evidencing tax payments made by Wood in the amount of $33,642.31 for Tremont Street and $4,770.26 for Jennings Street (totaling $38,412.57), when it awarded the reimbursement amounts for the Tremont and Jennings properties. Wood contends the trial court should have found additional amounts owed to Wood on these properties in at least one-half of the total tax payments made, or a total of $19,206.28, and ordered a monetary award in favor of Wood. Second, Wood argues that the Peachtree Accounting Records were admitted as "trustworthy" and "reliable" documents under Rule 803(6) of the Texas Rules of Evidence, but then ignored by the trial court as "wholly unreliable." In doing so, Wood contends the trial court abused its discretion.

Nothing in the record suggests that the trial court refused to consider these documents in their entirety. The trial court made no distinction in its findings between these two categories of documents. The trial court did find that "Wood's testimony and exhibits were generally unreliable," but that finding was made in

connection with the trial court's finding that Wood failed to prove by a preponderance of the credible evidence damages as to the John Silver Road, Fairfield Court, Sealy Avenue, Lone Oak Drive, Southern Hills Drive, and Warsaw Drive properties. The trial court further found that "Wood's testimony and exhibits were generally unreliable," but that finding was not made with specific reference to either category of documents or these three properties at issue. Rather, the trial court included that finding after finding that "Wood failed to prove by a preponderance of the credible evidence his claims of fraud and misapplication of funds by a fiduciary and his claim for exemplary damages."

Further, there was conflicting evidence as to the amount of money expended on these three properties, in both taxes and expenses, the amount collected in rents, and how much was owed from one party to another. As to Jennings Street, Wood's claim on appeal that he is entitled to half of the $4,770.26 (or $2,385.13) paid in taxes contradicts his own trial testimony that Wiggins's share of the taxes was $1,902.73. Additionally, because Jennings Street was owned by two other individuals in addition to Wood and Wiggins, Wood's claim that he conclusively demonstrated that he was entitled to half of the taxes paid is not supported by the evidence. Further, Wood testified that he was owed $10,309 from Wiggins for Jennings Street, which included one-quarter of the purchase price that Wiggins never paid. However, Wiggins testified, and Wiggins Exhibit 8 reflected, that he repaid his

46

portion of the purchase price—$8,250.25—as part of the true up or settlement of accounts that occurred in February 2007. And Wood admitted that if the trial court accepted that the February 2007 reconciliation occurred as reflected in Wiggins Exhibit 8, then Wiggins would owe $8,250.25 less than Wood claimed.

As to Tremont Street, Wood testified that he was entitled to $57,797.73 in reimbursement from Wiggins, which included approximately $24,000 in property taxes for the years 2007-2011. Wiggins, however, disagreed and testified that, after having reviewed the tax records, the total property taxes for the years 2007 to 2011 were $33,935, making his half $16,967. He also testified that Wood settled a lawsuit on the property, and Wiggins's portion of that settlement was $7,334. Other than those amounts, Wiggins testified that he paid the remainder of his portion of the property taxes from 2011 to 2017. Therefore, according to Wiggins, the total amount he owed Wood for property taxes was approximately $24,000. Wiggins also disputed a portion of the expenses Wood claimed for the Tremont Street property, including a $3,000 management fee and charges for warehouse materials used in repairing the property.

Finally, as to Oaklawn Street, Wood testified that the only amount Wiggins owed him on Oaklawn Street was for rent, which Wiggins oversaw collecting and Wood estimated to be $32,200 total, or $16,100 for each of them. Wiggins testified that the total amount of rent collected was $30,800, to which Wood was entitled to

47

half or $15,400. However, Wiggins also had incurred $12,338.13 in expenses, half of which Wiggins contended should be offset against the $15,400 owed to Wood for rent.

In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Miranda*, 390 S.W.3d at 553. In resolving factual disputes, the trial court may believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Id.* Thus, the trial court could have believed Wiggins's testimony over Wood's testimony and exhibits. We will not pass upon a witness's credibility or substitute our judgment for that of the factfinder, even if there is conflicting evidence that would support a different conclusion. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will not reevaluate the weight and credibility of the evidence and therefore defer to the trial court's role as the exclusive judge of the credibility of the witnesses who explained their transactions. *Olanipekun v. Omokaro*, No. 01-13-00888-CV, 2014 WL 5410058, at *4 (Tex. App.—Houston [1st Dist.] Oct. 23, 2014, no pet.) (mem. op.). We conclude there is sufficient evidence to support the trial court's findings and reimbursement amounts as to these three properties.

We overrule Wood's ninth issue.

## Hidden Lake

In his tenth issue, Wood challenges the legal and factual sufficiency of the trial court's Finding of Fact 16 related to Hidden Lake:

- On February 5, 2008, Wiggins purchased 121 Hidden Lake Drive, League City, TX 77573 (hereinafter "Hidden Lake") with funds borrowed from Wood, which funds were reimbursed to Wood shortly after the purchase. Wood admits he has no interest in Hidden Lake.

Wood contends there is no evidence of this finding.

As to the trial court's finding that Wiggins purchased Hidden Lake with funds borrowed from Wood, Wiggins testified that he bought Hidden Lake at a tax sale for $40,000. Wiggins testified that he borrowed "40,000 from [Wood]; and then [he] paid [Wood] back . . . [t]hat afternoon." According to Wiggins, Wood never owned an interest in Hidden Lake because Wiggins paid Wood back with either cash or certified checks. Wiggins agreed that he had not produced a receipt or check stub showing his repayment to Wood. Wiggins also agreed that he could not think of another transaction in which Wood advanced Wiggins money for the purchase of a property without being included as one of the buyers. Wiggins explained there were times when Wood and Wiggins would buy properties on their own and times when they would "joint venture," and that this depended on "the group [of buyers]" and the location of the property. For instance, there were certain geographical areas that Wiggins bought in, such as League City, and Wood "stay[ed] away from," and vice versa.

In contrast, Wood testified that he gave Wiggins the entire $40,000 purchase price for Hidden Lake. According to Wood, Wiggins never repaid any of the money or sent Wood a deed to that property. He further testified that, because Hidden Lake was a "very good buy" and worth about $140,000, it would not have been reasonable to finance the purchase but let "Wiggins have the entire thing."

Because the evidence here was disputed, the trial court, as factfinder, was tasked with determining the credibility of the witnesses and resolving the factual disputes and inconsistencies in their testimony. *Miranda*, 390 S.W.3d at 553. As evidenced by its finding, the trial court believed Wiggins's testimony that he borrowed $40,000 from Wood to purchase Hidden Lake and reimbursed Wood soon thereafter, over Wood's testimony to the contrary. We conclude there is more than a scintilla of evidence, and thus legally sufficient evidence, to support the trial court's finding that Wiggins purchased Hidden Lake "with funds borrowed from Wood, which funds were reimbursed to Wood shortly after the purchase." *See City of Keller*, 168 S.W.3d at 827. Likewise, applying deference to the trial court's role in evaluating the credibility of witnesses as factfinder, we conclude this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust and, therefore, there is factually sufficient evidence to support the finding. *See Cain*, 709 S.W.2d at 176; *Miranda*, 390 S.W.3d at 553.

Wood also challenges the legal and factual sufficiency of the evidence to support the trial court's finding that Wood admitted he had no interest in Hidden Lake. Wiggins does not directly contest this portion of Wood's argument, but instead argues that any error is harmless.

We have reviewed the record and have not found evidence of Wood's admission that he had no interest in Hidden Lake, and Wiggins has not directed us in his briefing to any evidence to support that finding. Nevertheless, we do not agree that this unsupported finding of fact requires reversal. The harmless error rule applies to all errors. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *see also* TEX. R. APP. P. 44.1. Under Rule of Appellate Procedure 44.1(a), as applicable to this case, the trial court's error is reversible only if it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1). It is the complaining party's burden to show harm on appeal. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009).

"While an erroneous finding of fact on an ultimate fact issue is harmful error, an immaterial finding of fact is harmless and not grounds for reversal." *New Process Steel, L.P. v. Sharp Freight Sys., Inc.*, No. 01-04-00764-CV, 2006 WL 947764, at *4 n.6 (Tex. App.—Houston [1st Dist.] Apr. 13, 2006, no pet.) (mem. op.) (citing *Cooke Cty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.)). An ultimate fact issue is "one that is essential to the cause of

action and has a direct effect on the judgment." *Cooke Cty.*, 129 S.W.3d at 731. An evidentiary issue is one the court may consider in deciding the controlling issue but is not controlling in and of itself. *Id.*

Wood makes no attempt to show that the erroneous finding that he admitted he had no interest in Hidden Lakes was essential to his causes of action related to that property or had a direct effect on the judgment. As noted above, the trial court provided numerous reasons for concluding that Wood could not recover on his claims as to Hidden Lake, including that they were barred by the statute of limitations, statute of frauds, and laches, and that Wood failed to prove his claims by a preponderance of the evidence. The trial court could have concluded that Wood failed to prove his claims by a preponderance of the evidence based on its finding that Wiggins borrowed the purchase money from Wood and reimbursed him for the entire $40,000 soon thereafter, regardless of whether Wood admitted he had no interest in Hidden Lake. Thus, considering the findings of fact and conclusions of law in their entirety, this challenged finding is one the trial court might have considered in deciding the controlling issue, but it was not controlling in and of itself. Because Wood has not shown that the trial court's error probably caused the rendition of an improper judgment, the error is harmless and reversal is not warranted. *See, e.g.*, *Saum v. Am. Express Nat'l Bank*, No. 02-19-00415-CV, 2021 WL 1034146, at *5 (Tex. App.—Fort Worth Mar. 18, 2021, pet. denied) (mem. op.)

(whether cardmember agreement was mailed to defendant was not essential to plaintiff's breach of contract cause of action because cardmember agreement, which was also referenced in challenged finding, was admitted into evidence and established the contractual relationship).

We overrule Wood's tenth issue.

**Attorney's Fees**

In his eleventh issue, Wood argues that the trial court erred in failing to award him attorney's fees. He contends he is entitled to attorney's fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code based on Wiggins's breach of contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8) ("A person may recover reasonable attorney's fees from an individual . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."). Because we have concluded that Wood's breach of contract claims are barred by the statute of frauds, we hold that Wood has failed to demonstrate that he prevailed on a claim that authorizes the recovery of attorney's fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (to recover attorney's fees under statute providing for such awards to prevailing party, party must prevail on cause of action for which attorney's fees are recoverable and recover damages).

We overrule Wood's eleventh issue.

**Settling of Accounts**

In his twelfth issue, Wood contends that the trial court erred in admitting into evidence Wiggins Exhibit 8 because the document was hearsay and had not been adopted by Wood. Wiggins Exhibit 8 is a purported settlement of accounts, showing that Wood owed Wiggins $122,976, as to the following six properties: (1) John Silver Road; (2) Champions Court; (3) Sealy Avenue; (4) Southern Hills Drive; (5) Jennings Street; and (6) Oaklawn Street.

Wood challenges the sufficiency of the evidence of the following findings of fact:

- Finding of Fact 13: "On February 18, 2007, there was a settling of accounts as between Wood and Wiggins where they accounted to each other for their respective outstanding debts and credits as to six (6) of those properties–John Silver, Champions Ct., Sealy, Southern Hills, Jennings, and Oaklawn, which resulted in Wood paying Wiggins $122,976."

- Finding of Fact 14: "Wood's claim for reimbursement of $2,607.00 on John Silver was paid as part of the February 18, 2007 reconciliation of accounts."

## A.    Standard of Review

We review complaints about the admission or exclusion of evidence for an abuse of discretion. *In the Interest of J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). To obtain a reversal of a judgment based on the erroneous admission of evidence, an appellant must show that (1) the trial court's ruling was in error, and (2) the error probably caused the rendition of an improper judgment. *Interstate Northborough*

*P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); TEX. R. APP. P. 44.1(a)(1). To show harm, the evidence must be controlling on a material issue and not cumulative of other evidence. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). The erroneous admission of evidence that is merely cumulative of properly admitted evidence is harmless error. *Gee v. Liberty Mut. Fire Ins., Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

## B.    Analysis

Although Wood discusses the purported error in his brief, apart from the conclusory statement that the document was "clearly prejudicial," he has failed to provide any substantive analysis as to how he was harmed by the trial court's alleged erroneous admission of this evidence. *See* TEX. R. APP. P. 44.1(a); *Richard D. Davis, LLP v. Sky Lakes Flyers Found.*, No. 14-17-00372-CV, 2019 WL 1030156, at *9 (Tex. App.—Houston [14th Dist.] Mar. 5, 2019, pet. denied) (mem. op.). Harm must be shown before we can reverse a judgment. *See* TEX. R. APP. P. 44.1(a) (no judgment may be reversed on appeal on the basis that the trial court erred unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case).

As explained above, we have already determined that Wood's causes of action as to two of the properties complained about here—John Silver Road and Southern

Hills Drive—were barred by the applicable statute of frauds. Further, because Wood failed to object to all of the trial court's independent bases for denying his claims as to another one of the properties complained about here, Champions Court, we must affirm the trial court's ruling as to that property. *See Britton*, 95 S.W.3d at 681 ("[A]n appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. If an appellant does not, then we must affirm the ruling or judgment." (internal citations omitted)).

Finally, Wood has not shown that the complained-of evidence was not cumulative of other evidence. In his trial testimony, Wood admitted that he and Wiggins had a conversation on February 18, 2007, regarding settlement or "true-up" related to "half-a-dozen-or-so properties." After that conversation, Wood admitted that he wrote a check for $122,976. Wood's check for $122,976 was separately admitted into evidence as Wood Exhibit 12.

Based on this evidence, we conclude that Wood has failed to show how he was harmed by the allegedly erroneous admission of Wiggins Exhibit 8. Accordingly, we overrule Wood's twelfth issue.

## Conclusion

We have found no reversible error in the trial court's judgment. However, because we hold that the judgment did not properly reimburse Wood for the $259,208.76 found by the trial court, and agreed to by the parties, to be owed to

Wood for various expenses on a number of jointly owned properties, we modify the judgment of the trial court to provide that after the net proceeds from the sale of the 22nd Avenue, Fairfield Court, Oaklawn Street, Sealy Avenue, and Tremont Street properties are equally divided between Wood and Wiggins, the sum of $259,208.76 should be subtracted from Wiggins's share and awarded to Wood.

We affirm the judgment as modified.

Amparo Guerra
Justice

Panel consists of Chief Justice Radack and Justices Rivas-Molloy and Guerra.

57